UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| FRASERSIDE IP LLC,<br>    An Iowa Limited Liability Company<br><br>vs.<br><br>Youngtek Solutions Limited, dba EmpFlix,<br>dba www.empflix.com, dba TNAFlix.com and<br>www.tnaflix.com, and<br>John Does 1 – 100 and<br>John Doe Companies 1 - 100 | CASE NO. 3:11-cv-3005 MWB<br><br>MOTION TO SET ASIDE<br>DEFAULT |

Table of Contents

Facts ........................................................................................................... 2
Argument ................................................................................................... 6
   I. The Courts Have Repeatedly Expressed A Strong Preference for
     Resolution On the Merits of a Claim ............................................... 6

   II. All of the Relevant Factors Favor the Setting Aside of the Default......... 7
     A. Youngtek's Delay in Responding to the Complaint Constituted
       Excusable Neglect ....................................................................... 7
     B. Youngtek Has Numerous And Strong Defenses Against .................... 8
       1. Youngtek is Not Subject To Personal Jurisdiction in Iowa........... 8
       2. Youngtek Is Entitled to Safe Harbor Because It Has a
         DMCA Agent for Takedown Notices, Which Fraserside
         Never Bothered to Utilize.................................................. 10
       3. Fraserside Does Not Have Standing to Assert the Present
         Claims............................................................................ 11
       4. Fraserside Doesn't Even Believe Its Own Damages Claim ......... 13
     C. The Plaintiff Will Suffer No Prejudice if The Default Is Set Aside 14

Conclusion.................................................................................................. 14

Defendant Youngtek Solutions, Limited ("Youngtek") moves to set aside the default and in support thereof states:

Having first attempted to serve defendant Youngtek Solutions, Limited ("Youngtek") in a wholly impermissible manner, Plaintiff Fraserside IP, LLC ("Fraserside") then "graduated" to utilizing a *likely* impermissible manner. Although Youngtek continues to believe that proper service has not been effectuated under the Hague Convention, it nevertheless appears for the limited purposes of asking this Court to set aside the default issued against it, so that it may move to dismiss for lack of personal jurisdiction, forum non conveniens, and a complete failure to state a claim upon which relief may be granted.

Because Youngtek has good cause for setting aside the default including, but not limited to a failure to properly serve Youngtek and the existence of meritorious defenses, Youngtek respectfully requests that the default entered by the Clerk in this matter be set aside pursuant to Fed. R. Civ. P. 60(b). In further support of this motion, Youngtek states as follows.

## Facts

According to its own complaint, the Plaintiff, Fraserside, is a wholly owned subsidiary of Fraserside Holdings, Ltd. ("Fraserside Holdings"), a Cyprus based company. Complaint, ¶5. Rather than initiate the present action in Cyprus, however, where defendant Youngtek also has a presence (Complaint, ¶18), Fraserside had its attorney, Chad Bellville, rent "an unoccupied, nondescript office" lacking even basic electricity in Northwood, Iowa, under the pretense that Attorney Bellville – formerly a Worth County prosecutor – might one day return to Iowa to practice law. See "There's a WHAT shop in Northwood? Oh Lordy...," Des Moines Register, February 21, 2011,

attached hereto at Tab 1 and "Munson: Weather a sexier subject than porn-related office," Des Moines Register, February 23, 2011, attached hereto at Tab 2.

Fraserside conducts no actual business – in Iowa or anywhere else – but rather it is an entity which was created to hold certain intellectual property of its Cyprus-based parent, Fraserside Holdings. Complaint, ¶5. In reality, Fraserside - first incorporated in Iowa in late October of 2010 (see Tab 3) - appears to have been created for the sole purpose of judicial forum shopping. Indeed, in the first seven months of its existence, Fraserside has filed six different cases in this Court. (Fraserside IP LLC v. Slutload et al, 10-cv-03066-MWB; Fraserside IP LLC v. Youngtek Solutions Ltd et al, 11-cv-03005-MWB; Fraserside IP LLC v. IG Media Inc., 11-cv-03015-MWB; Fraserside IP LLC v. Gens, 3:11-cv-03019-MWB; Fraserside IP LLC v. Gens, 11-cv-03022-MWB; Fraserside IP LLC v. WhoIsGuard et al, 11-cv-03025-MWB.

Other than having hired an attorney who once practiced in Iowa and renting an unoccupied office lacking even basic electricity, Fraserside appears to have no connections whatsoever to Iowa. Defendant Youngtek, however, lacks even *that* much of a connection to Iowa. Youngtek has no offices in Iowa, no telephone number in Iowa, no employees in Iowa, and no agent of process in Iowa. Youngtek does not advertise in Iowa and, indeed, no Youngek officer or director has ever even visited Iowa. See Affidavit of Arjan Wijnveen, attached hereto at Tab 4.

On or about March 30, 2011, Fraserside served a copy of the summons and complaint on Oleg Cross, an attorney in California who had once served as local counsel for Youngtek in an unrelated matter. Attorney Cross had not been retained by

Youngtek in connection with this litigation, nor did he have authority to accept service on Youngtek's behalf. See Affidavit of Oleg Cross, attached hereto at Tab 5. On or about April 4, 2011, Fraserside served a copy of the summons and complaint on Valentin Gurvits, an attorney in Massachusetts who had once represented Youngtek in an unrelated matter. Attorney Gurvits, at the time, had not been retained by Youngtek in connection with this litigation, nor did he have authority to accept service on Youngtek's behalf.[1] See Affidavit of Valentin Gurvits, attached hereto at Tab 7.

On or about April 13, 2011, an individual named Tassos Kontos served a copy of the summons and complaint on Youngtek's agent for process in Cyprus. The complaint was not served through the Central Authority, nor was it translated into Greek, as would be required for formal service of process under the Hague Convention. Instead, Fraserside opted for the less formal service by means of private process server. However, in Cyprus, private process servers are required to be authorized by the Supreme Court to serve process. <u>A search of the records of the authorized process servers in Cyprus, as maintained by the Cyprus Supreme Court, has revealed no individual by the name of Tassos Kontos who is actually authorized to serve process in Cyprus</u>. See Email of Maria Pilikou, attached hereto at Tab 8. Accordingly, no proper service of process has been made on Youngtek.

---

[1] This is not Attorney Bellville's first attempt to take short cuts around the service requirements of the Hague Convention in a case of this sort. See BluMedia Inc. v. Sordid Ones BV, 2011 U.S. Dist. LEXIS 2176 (D. Colo. 2011)(rejecting Attorney Bellville's attempt to effectuate service by email and holding that "the Court finds that, under the circumstances of this case, requiring Plaintiff to first attempt service pursuant to the Convention's central authority procedure is appropriate"), attached hereto at Tab 6.

Although Youngtek does have an office in Cyprus, none of its management is located there. Wijnveen Affidavit, ¶10. When the complaint and summons were left with Youngtek's employee in Cyprus, he did not immediately understand the import of such papers, given that they were not accompanied by a Greek translation. Wijnveen Affidavit, ¶11. Eventually, the Cyprus office mailed the hard copies of the papers to Youngtek's management. Wijnveen Affidavit, ¶12. Upon receipt, Youngtek consulted with its European counsel and was advised that the papers had not been properly served. Wijnveen Affidavit, ¶13. Nevertheless, Youngtek contacted Attorney Valentin Gurvits to begin the process of retaining him to represent them in this matter, under the assumption that – at some point – proper service might be made. Wijnveen Affidavit, ¶14. Attorney Gurvits, in turn, began the process of locating local counsel. Gurvits Affidavit, ¶6. Some of the attorneys initially contacted indicated that they and their firms were conflicted out of representing Youngtek in this matter. Gurvits Affidavit, ¶6. However, local counsel has now been retained and Youngtek has diligently sought to have the default set aside.

Substantively, Fraserside's complaint is subject to dismissal because, at all relevant times, Youngtek has maintained a DMCA agent for service of takedown notices, which provides it a safe harbor from actions such as the one brought by Fraserside. Fraserside's complaint is wholly devoid of any allegation that it ever issued a takedown notice requesting that materials be removed from any of Youngtek's websites and, indeed, Youngtek is unaware of having received any such notices from Fraserside. Wijnveen Affidavit, ¶16. Additionally, as is discussed below, there is

5

serious question as to whether Fraserside has standing to bring its claims, given that it appears to hold only the "bare right to sue" and not any actual rights recognized under copyright law.

## Argument

### I. The Courts Have Repeatedly Expressed A Strong Preference For Resolution On the Merits of a Claim.

Pursuant to Fed. R. Civ. P. 60(b), a default may be set aside if the Court finds that the default was the result of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). In considering a motion under Rule 60(b)(1), the Court is guided first by the strong judicial preference for a resolution on the merits. The Eighth Circuit has "frequently endorsed the strong judicial policy against default judgments." Oberstar v. FDIC, 987 F.2d 494 (8th Cir. 1993)(citations omitted). "The judicial preference for adjudication on the merits goes to the fundamental fairness of the adjudicatory process." Id. Indeed, the Eighth Circuit has gone so far as to say it is an abuse of discretion for a court to enter a default judgment against a defendant where there was little more than a "marginal failure to comply with time requirements." Id.

The question of whether to set aside a default is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Feeney v. AT&E, Inc., 472 F.3d 560, 563 (8th Cir. 2006). In deciding if a default should be set aside, the Court considers any number of factors, including the danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, whether the movant acted in good faith and the

existence of a meritorious defense. Id. The Court should not "focus narrowly on the negligent act that caused the default," but rather should ask whether the act "was in some sense excusable," given the litany of factors to be considered. Union Pacific Railroad Co. v. Progress Rail Services Corp., 256 F.3d 781, 782 (8th Cir. 2001).

## II. All of the Relevant Factors Favor the Setting Aside of the Default.

### A. Youngtek's Delay in Responding to the Complaint Constituted Excusable Neglect.

Preliminarily, because Youngtek has never been properly served, it did not (and even now) *has no*t defaulted on an obligation to answer or otherwise respond to the Complaint. And, as this court has stated in similar circumstances, where service upon the defendant was improper under the Hague Convention, "this federal court lacks jurisdiction... and the default judgment obtained in the absence of personal jurisdiction is void and must be vacated." Premium Iowa Pork v. Banss Schlacth-Und Foerdertechnik, GmbH, 2007 U.S. Dist. LEXIS 68264 (N.D. Iowa 2007).

Even if service by Mr. Kontos was proper, however, the default should be set aside for excusable neglect. As is detailed above, the copy of complaint and summons was left (without translation) in Youngtek's Cyprus office. Not understanding the import of the documents (because of the lack of translation), there was a delay in sending the papers to Youngtek's European offices. Once received by the European offices, Youngtek was advised (properly, it appears), that proper service had not been made. Even so, Youngtek did not sit on its rights, but rather retained U.S. counsel,

7

Valentin Gurvits. Mr. Gurvits, in turn, was diligent in retaining local Iowa counsel, despite the difficulties in doing so.

Litigation should not be a game of ambush. Where Youngtek has not sat on its rights – indeed, it has acted to protect those rights even in the absence of proper service – its negligence (if any) "was in some sense excusable," given the litany of factors to be considered. Union Pacific Railroad Co. v. Progress Rail Services Corp., 256 F.3d 781, 782 (8th Cir. 2001).

### B. Youngtek Has Numerous and Strong Defenses Against Fraserside's Claims.

Although Youngtek intends to more fully expound on its defenses and bases for dismissal in a formal motion to dismiss, for the purposes of this motion, Youngtek provides the following *summary* of some of its meritorious defenses to the claims raised by Fraserside. More detailed legal analysis will be included in Youngtek's motion to dismiss.

#### 1. Youngtek is Not Subject To Personal Jurisdiction in Iowa.

In its complaint, Fraserside cites – as the basis for personal jurisdiction over Youngtek - 28 U.S.C. §§ 1391. See Complaint, ¶4. Section 1391, of course, has nothing to do with personal jurisdiction, or jurisdiction at all, but rather is the federal venue statute. Fraserside's pleading deficiencies, however, go much further than a mere inability to cite to the correct authority: Fraserside has failed to articulate any basis for the exercise of personal jurisdiction over Youngtek.

8

Presumably, Fraserside intended to assert jurisdiction over Youngtek pursuant to Iowa's long arm statute. See, Iowa Code § 617.3 and Iowa Rule of Civil Procedure 56.2. The Court "may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." Dakota Indus., Inc. v. Ever Best Ltd., 28 F.3d 910, 915 (8th Cir. 1994). Because Iowa's long arm statute extends jurisdiction to the limits of due process allowed by the United States Constitution, the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process." Bell Paper Box, Inc. v. U.S. Kids, Inc. (Bell Paper I), 22 F.3d 816, 818 (8th Cir. 1994).

The Due Process Clause requires "minimum contacts" between the nonresident defendant and the forum state before the court may exercise jurisdiction over the defendant." Coen v. Coen, 509 F.3d 900, 905 (8th Cir. 2007) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980)). "The Eighth Circuit Court of Appeals has explained sufficient minimum contacts as follows: 'Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Johnson at 1020-21. This Court employs a five-part test for measuring minimum contacts: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. Factors one through three are primary. Id. "With respect to the third factor, we

distinguish between specific jurisdiction and general jurisdiction. 'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" Id. (citations omitted).

In the present case, Fraserside has failed to allege – and cannot allege – any facts which will bring Youngtek within this Court's jurisdiction. As will be discussed in more detail in Youngtek's motion to dismiss, not only does Youngtek have no contacts with Iowa which would satisfy the minimum contacts tests, there are no allegations as to how Fraserside's cause of action arises out of or is related in any way to any action or omission on Youngtek's part which occurred in Iowa.

Finally, even if this Court could somehow exercise personal jurisdiction over Youngtek, it should decline to do so for reasons of forum non conveniens. It is inconceivable why this Court would want to entertain an action as between a Cyprus defendant and a Cyprus real party in interest, simply because the Plaintiff has purchased the equivalent of a mail drop in Iowa for the sole purpose of bringing claims here.

>    2.  <u>Youngtek Is Entitled to Safe Harbor Because It Has a DMCA Agent for Takedown Notices, Which Fraserside Never Bothered to Utilize.</u>

Pursuant to 17 U.S.C. §512(c), Youngtek is entitled to "safe harbor" from actions such as the present one because it has, at all relevant times, maintained a DMCA agent for service of takedown notices and responded expeditiously to all properly submitted

10
Case 3:11-cv-03005-MWB-LTS   Document 15   Filed 06/17/11   Page 10 of 15

takedown notices. In short, providers such as Youngtek are immune from suits for damages for copyright infringement by its users if certain conditions are met – such as the provider having appointed a DMCA agent and if that agent responds expeditiously to those properly issued takedown notices that it receives. Shockingly absent from Fraserside's complaint is a single assertion that it ever issued a takedown notice to Youngtek (proper or otherwise) or that it put Youngtek on notice in any form that it believed its copyrights were being violated. In absence of such allegations, Fraserside's complaint will, as a matter of law, fail in its entirety.[2]

       3. <u>Fraserside Does Not Have Standing to Assert The Present Claims.</u>

Pursuant to Section 501(b) of the 1976 Copyright Act, 17 U.S.C. § 101, et. seq., (the "Act") only the legal or beneficial owner of an exclusive right under copyright law is entitled, or has standing, to sue for infringement. <u>Silvers v. Sony Pictures Entm't Inc.</u>, 402 F.3d 881, 884 (9th Cir. 2005) (en banc). In so holding, the Ninth Circuit followed the Second Circuit's decision in <u>Eden Toys, Inc. v. Florelee Undergarment Co.</u>, 697 F.2d 27 (2d Cir. 1982), superseded by rule and statute on other grounds. See also, ABKCO Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d 971, 980 (2d Cir. 1991) (citing <u>Eden Toys</u>, "the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf.")

While it is true that the exclusive rights under copyright law, may be transferred and owned separately, the assignment of a bare right to sue is ineffectual because it is

---

[2] Attorney Bellville is well familiar with the requirements of, and protections afforded by, the DMCA as he himself

not one of the exclusive rights. Silvers at 884-85. Since the right to sue is not one of the exclusive rights, transfer solely of the right to sue does not confer standing on the assignee. Id. at 890. One can only obtain a right to sue on a copyright if the party also obtains one of the exclusive rights in the copyright. See id. Further, to obtain a right to sue for past infringement, that right must be expressly stated in the assignment. See generally, id.

At best, it appears that PMG may have transferred a bare right to sue to Fraserside – which would not give Fraserside standing to maintain the present action. At worst, the allegations in the complaint are specifically designed to mislead this Court. In paragraphs 5-17 of the Complaint, the Plaintiff consistently attempts to confuse various corporate entities, referring at times to "Plaintiffs" (plural), even though there is only one "Plaintiff" (singular). This is not accidental. The Plaintiff, Fraserside, claims to own a variety of trademarks. According to the United States Patent and Trademark Office, it does not. See Tab 9. In reality, the trademarks which Fraserside claims to own for purposes of this litigation are actually owned by another PMG subsidiary, Cine Craft Ltd. Id. Similarly, Fraserside's repeated assertions that it "has expended considerable effort and expense in promoting its trademarks" and that it "has produced in excess of 1,000 full-length adults-only or adult-oriented audio-visual works and holds over 75 United States copyrights for its works" are simply not true. Although Fraserside's parent corporations and related subsidiaries *may* (or may not)

---

serves as the DMCA agent for a number of different pornography websites. See, e.g., http://www.temptingdreams.com/privacy

12
Case 3:11-cv-03005-MWB-LTS   Document 15   Filed 06/17/11   Page 12 of 15

have done so, there is no question but that Fraserside – the only named plaintiff in this case – did not. Fraserside's attempts to portray otherwise appears to be nothing more than an attempt to create jurisdiction in a location where none exists over claims which Fraserside does not have standing to raise.

4. Fraserside Doesn't Even Believe Its Own Damages Claim.

Despite the dramatic and overblown prose of Fraserside's complaint, and the damages claims asserted in its motion for default judgment, Fraserside does not even believe its own rhetoric. Far from the extravagant damage claims presented to the Court, the CEO of Fraserside's corporate parent,[3] Berth Milton, has recently stated in media interviews that the company believes that internet "pirates" are a benefit to PMG, providing them with free promotion. Specifically, Mr. Milton told reporters: "We will be extremely happy the more people are pirating our content and the more they look at it.... We will not fight it [piracy] that hard anymore. It's a new world and we have to accept it. ...It's a lost battle so try to use it instead. And use all this enormous amount of traffic and make it open, open up for everyone... we want you." See "Video: Private CEO says Porn Piracy is Promotion," attached at Tab 10 and video located at http://gigaom.com/video/video-private-ceo-says-porn-piracy-is-promotion/.

Fraserside cannot at one and the same time invite the distribution of video content and also cry foul when such content is then distributed, to its benefit. If the present case were not dismissed on a motion to dismiss, Youngtek would have yet

---

[3] As is noted, Fraserside is the wholly owned subsidiary of Fraserside Holdings. Fraserside Holdings, in turn, is the wholly owned subsidiary of Private Media Group ("PMG"), a publicly-traded corporation. PMG's CEO is Berth Milton.

another defense based on Mr. Milton's admission that the proliferation helps, not harms Youngtek.

### C. **The Plaintiff Will Suffer No Prejudice if The Default Is Set Aside**.

Even if Fraserside's informal service of process was proper under the Hague Convention, service of process was then made no earlier than April 13, 2011 and a response would not have been due until May 4, 2011. The case, then, has been "delayed" by less than two months – delay which has been occasioned entirely by the Plaintiff's own attempts to bypass the requirements of the Hague Convention. Under these circumstances, Fraserside will suffer no prejudice if the default is removed and Youngtek is given a reasonable amount of time within which to file its motion to dismiss.

### **Conclusion**

For the reasons stated herein, Youngtek respectfully requests that the default issued by the clerk be set aside pursuant to Fed. R. Civ. P. 60(b) and that Youngtek then be given a reasonable period of time within which to file its motion to dismiss.

Respectfully submitted,

Youngtek Solutions, Ltd.

By its attorneys,

/s/Valentin Gurvits
Valentin Gurvits, *pro hac vice pending*
Boston Law Group, PC
825 Beacon Street, Suite 20

Newton, MA 02459
BBO # 643572
(617) 928-1804
vgurvits@bostonlawgroup.com


/s/Evan Fray-Witzer
Evan Fray-Witzer, *pro hac vice pending*
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 804
Boston, MA 02116
(617) 723-5630
Evan@CFWLegal.com


/s/Connie Alt
CONNIE ALT                AT0000497
            for
SHUTTLEWORTH & INGERSOLL, P.C.
500 US Bank Bldg., P.O. Box 2107
Cedar Rapids, IA 52406
PHONE:      (319) 365-9461
FAX:        (319) 365-8564
cma@shuttleworthlaw.com


ECF CERTIFICATE OF SERVICE

I, Connie M. Alt, hereby certify that on June 17, 2011, a copy of the above document was served on Chad Bellville, attorney for the plaintiff, through the Court's ECF system.


/s/Connie M. Alt