**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

FRASERSIDE IP L.L.C., an Iowa
Limited Liability Company,

       Plaintiff,

vs.

YOUNGTEK SOLUTIONS LIMITED,
dba EmpFlix, dba www.empflix.com,
dba TNAFlix.com and www.tnaflix.com,
and John Does 1-100 and John Doe
Companies 1-100,

       Defendants.

No. C11-3005-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANT
YOUNGTEK SOLUTIONS
LIMITED'S MOTION TO SET ASIDE
DEFAULT AND PLAINTIFF'S
MOTION FOR DEFAULT
JUDGMENT**

---

**TABLE OF CONTENTS**

*I.  INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A.  Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B.  Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*II.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *A.  Entry Of Default And Default Judgment* . . . . . . . . . . . . . . . . . . . . 4
   *B.  Motion To Set Aside Default* . . . . . . . . . . . . . . . . . . . . . . . . . 7
      *1.  Applicable rules for service* . . . . . . . . . . . . . . . . . . . . . . . 7
      *2.  Sufficiency of service on Youngtek* . . . . . . . . . . . . . . . . . . . 9
         *a.  The Hague Convention* . . . . . . . . . . . . . . . . . . . . . . . 9
         *b.  Service on Youngtek* . . . . . . . . . . . . . . . . . . . . . . . . 11
      *3.  Setting aside default for good cause* . . . . . . . . . . . . . . . . . 13
         *a.  Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . 14
         *b.  Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

|     | *i.*   | *Blameworthiness or culpability* | . . . . . . . . . . | 14 |
|     | *ii.*  | *Youngtek's possible defenses*   | . . . . . . . . . . . | 17 |
|     | *iii.* | *Whether Fraserside would be prejudiced* | . . . . . | 19 |
|     | *iv.*  | *Summary*                        | . . . . . . . . . . . . . . . . . . . . . . . . . | 20 |
| *C.* | *Motion For Default Judgment* | | . . . . . . . . . . . . . . . . . . . . . . . . . . . | 20 |

*III.* **CONCLUSION**  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

In this lawsuit, the plaintiff asserts a variety of copyright and trademark infringement claims against defendants concerning adult motion pictures on their internet websites.  The Clerk of Court has entered a default against defendant Youngtek Solutions Limited ("Youngtek").   Youngtek, a foreign corporation, has moved to set aside that default on the grounds that it is void for insufficient service of process and,  alternatively, that it should be set aside for good cause.  The plaintiff has resisted Youngtek's motion on all grounds, asserting that the default should be allowed to stand, and filed its own motion for default judgment in which it requests that default judgment be entered in its favor.

## I.  INTRODUCTION AND BACKGROUND

### A.  Procedural Background

On February 17, 2011, plaintiff Fraserside IP L.L.C. ("Fraserside") filed a complaint against Youngtek, John Does, and John Doe Companies, alleging the following causes of action: copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; contributory copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*;

vicarious copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; inducing copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 *et seq.*; trademark infringement, in violation of 15 U.S.C. § 1114; contributory trademark infringement, in violation of 15 U.S.C. § 1114; vicarious trademark infringement, in violation of 15 U.S.C. § 1114; false designation of origin, in violation of 15 U.S.C. § 1125(a); and, dilution of trademark, in violation of 15 U.S.C. § 1125(c). On April 13, 2011, Fraserside had a private process server, Tassos Kontos, serve copies of a summons and complaint upon Youngtek's registered agent for service of process in Cyprus.

On June 1, 2011, Fraserside filed a Motion for Clerks Entry of Default (docket no. 11). On June 2, 2011, the Clerk of Court entered Youngtek's default (docket no. 13). On June 16, 2011, Fraserside filed a Motion For Entry Of Default Judgment (docket no. 14). On June 17, 2011, Youngtek filed a Motion To Set Aside Default (docket no. 15). In its motion, Youngtek moves to set aside the default arguing it has not been properly served. Youngtek argues, alternatively, that the default should be set aside for good cause. On June 23, 2011, Fraserside filed a timely resistance to Youngtek's motion. Fraserside argues Youngtek's motion is premature because default judgment has not yet been entered against it. Fraserside, alternatively, argues Youngtek has not demonstrated excusable neglect to set aside the default.

### B. Factual Background

On April 13, 2011, the summons and complaint, with no Greek translation, were served on Youngtek's agent for process in Cyprus. Although Youngtek does have an office in Cyprus for service of process, none of its management is located there. Youngtek's agent did not understand the importance of the summons and complaint because of the lack of a Greek translation. Youngtek's Cyprus office mailed hard copies

3

of the summons and complaint to Youngtek's management.  Youngtek maintains that this mailing process took "a couple weeks."  Wijnveen Aff. at ¶ 12 (docket no. 15-4).  When Youngtek's management received the documents, it consulted with its European counsel and was advised that the documents had not been properly served.  On April 29, 2011, Youngtek's European counsel sent a letter to Keys Systems GmbH, the registrar for the domain names TnaFlix.com and EmpFlix.com, which referenced this lawsuit.  Because Youngtek assumed that proper service of process might be made it contacted attorney Valentin Gurvitis to retain him to represent it in this matter.  After he was formally retained, Gurvitis spent two weeks locating qualified local counsel in Iowa.  Gurvitis Aff. at ¶ 6 (docket no. 15-7).  On June 17, 2011, Gurvitis retained local counsel in Iowa.  Gurvitis Aff. at ¶ 6.   On this same date, Youngtek filed its Motion To Set Aside Default.

## II.  LEGAL ANALYSIS

### A.  Entry Of Default And Default Judgment

Rule 55 of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> **Rule 55.  Default; Default Judgment**
> (a)     **Entering a Default.**  When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b)     **Entering a Default Judgment.**
> (1)     *By the Clerk.*  If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against

4

a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

    **(2)**   ***By the Court.*** In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

    **(A)**   conduct an accounting;

    **(B)**   determine the amount of damages;

    **(C)**   establish the truth of any allegation by evidence; or

    **(D)**   investigate any other matter.

    **(c)**   **Setting Aside a Default or a Default Judgment.** The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b).

FED. R. CIV. P. 55.

In *Hayek v. Big Brothers/Big Sisters of America*, 198 F.R.D. 518 (N.D. Iowa 2001), I summarized the mechanics under Rule 55 of obtaining the entry of default and default judgment, as well as the method for setting aside a default or default judgment, as follows:

Under Rule 55, "[w]hen a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)." *See Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 783 (8th Cir. 1998); *see also Hagen v. Sisseton-Wahpeton Community College*, 205 F.3d 1040, 1042 (8th Cir. 2000) (citing Johnson for this requirement). "Entry of a default under Federal Rule of Civil Procedure 55(a) is not, as such, entry of a judgment; it merely permits the plaintiff to move for a default judgment under Rule 55(b)(2), assuming that the default is not set aside under Rule 55(c)." *Inman v. American Home Furniture Placement, Inc.*, 120 F.3d 117, 118 n. 2 (8th Cir. 1997). Moreover, "'a default judgment cannot be entered until the amount of damages has been ascertained.'" *Hagen*, 205 F.3d at 1042 (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2d Cir. 1993)). Thus, if the judgment sought is not for a sum certain, Rule 55(b)(2) provides that "the court may conduct such hearings or order such references as it deems necessary and proper" in order to "enable the court to enter judgment." Fed. R. Civ. P. 55(b)(2). In short, as this court has explained, Rule 55 "requires two steps before entry of a default judgment: first, pursuant to Fed. R. Civ. P. 55(a), the party seeking a default judgment must have the clerk enter the default by submitting the required proof that the opposing party has failed to plead or otherwise defend; second, pursuant to Fed. R. Civ. P. 55(b), the moving party may seek entry of judgment on the default under either subdivision (b)(1) or (b)(2) of the rule." *Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673, 683 (N.D. Iowa 1995).

*Hayak*, 198 F.R.D. at 520.

The Clerk of Court has entered the default of Youngtek pursuant to Rule 55(a), completing the first step in the two-step process toward default judgment. *See id*. Thus, the questions presented by the pending motions are whether I should now take the second

step, and enter default judgment pursuant to Rule 55(b)(2), or whether I should, instead, set aside the entry of default pursuant to Rule 55(c).[1] *See id.*

### B. Motion To Set Aside Default

#### 1.    Applicable rules for service

It is uncontested that Youngtek is not located within a judicial district of the United States, but has a business address in Cyprus.  *See* Complaint at ¶¶ 2, 18; Youngtek Mot. To Set Aside Default at 2.  The service of an individual or corporation, partnership, or association located at a place not within any judicial district of the United States is governed by Federal Rules of Civil Procedure 4(f) and 4(h)(2).  Rule 4(f) provides:

> **(f)    Serving an Individual in a Foreign Country.**
> Unless federal law provides otherwise, an individual--
> other than a minor, an incompetent person, or a person
> whose waiver has been filed--may be served at a place
> not within any judicial district of the United States:
>
> **(1)**    by any internationally agreed means of service
> that is reasonably calculated to give notice, such
> as those authorized by the Hague Convention on
> the Service Abroad of Judicial and Extrajudicial
> Documents;
>
> **(2)**    if there is no internationally agreed means, or if
> an international agreement allows but does not
> specify other means, by a method that is
> reasonably calculated to give notice:

---

[1]Fraserside argues that Youngtek's motion is premature because a default judgment has not yet been entered.  However, because Rule 55(c) clearly permits a court to set aside either a default or a default judgment, Fraserside's argument is meritless.

7

> **(A)**    as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>
> **(B)**    as the foreign authority directs in response to a letter rogatory or letter of request; or
>
> **(C)**    unless prohibited by the foreign country's law, by:
>
> > **(i)**    delivering a copy of the summons and of the complaint to the individual personally; or
> >
> > **(ii)**    using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> **(3)**    by other means not prohibited by international agreement, as the court orders.

FED. R. CIV. P. 4(f). In turn, Rule 4(h)(2) provides:

> **(h)**    **Serving a Corporation, Partnership, or Association.**
> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
> . . . .
>
> **(2)**    at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

8

FED. R. CIV. P. 4(h)(2).

Thus, Rule 4 provides both that an individual "may be served at a place not within any judicial district of the United States by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention. . . .," FED. R. CIV. P. 4(f)(1), and that a corporation "at a place not within any judicial district of the United States" may be served "in any manner prescribed by Rule 4(f) for serving an individual." *Id.* at 4(h)(2).  Neither party disputes that both the United States and Cyprus are signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters ("Hague Convention"), T.I.A.S. No. 6638, 20 U.S.T. 361, 1969 WL 97765.[2]

### 2.     *Sufficiency of service on Youngtek*

### a.     *The Hague Convention*

"The Hague Convention is a multinational treaty, formed in 1965 for the purpose of creating an 'appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time.'" *Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 173 (8th Cir. 1989) (quoting Hague Convention preamble, T.I.A.S. No. 6638, 20 U.S.T. 361, 1969 WL 97765).  The Hague Convention was created "to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694,

---

[2]The Hague Convention is in force in both the United States and Cyprus.  *See Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the S. Dist. of Iowa*, 482 U.S. 522, 524 n.1 (1987).  The Hague Convention, as a ratified treaty, is the supreme law of the land, and has controlling effect.  *See* U.S. CONST. art. VI, cl. 2.

698, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988).  The Eighth Circuit Court of Appeals has explained:

> The Convention sets out specific procedures to be followed in accomplishing service of process. Articles 2 through 6 provide for service through a central authority in each country. Article 8 allows service by way of diplomatic channels. Article 19 allows service by any method of service permitted by the internal law of the country in which service is made. Under Article 21 of the Convention, each signatory nation may ratify its provisions subject to conditions or objections.

*Bankston*, 889 F.2d at 173.  Thus, the Hague Convention requires each member country to establish a central authority that receives requests for service of documents from other countries.  Upon receiving a request for service, a central authority must serve the documents by a method prescribed by that country's internal law or by a method designated by the requester and compatible with that law.  *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698–99 (1988) (citing Hague Service Convention arts. 2, 5, 6).  So, to serve defendants, Fraserside must adhere to procedures set out in the Hague Convention.[3]  *See FTC v. Compagnie de*

---

[3]As the Advisory Committee Notes to  Rule 4 explain:

> Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service. *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988) (noting that voluntary use of these procedures may be desirable even when service could constitutionally be effected in another manner); J. Weis, *The Federal Rules and the Hague Conventions: Concerns of Conformity and Comity,* 50 U. Pitt. L. Rev. 903 (1989). Therefore, [paragraph (f)] provides that,

(continued...)

*Saint–Gobain–Pont–a–Mousson,* 636 F.2d 1300, 1323 n.136 (D.C. Cir. 1980) ("The Hague Convention . . . establishes standard procedures for service of judicial and extrajudicial documents in the territory of one contracting nation in aid of private commercial or civil litigation taking place in another contracting nation.").

### b.     *Service on Youngtek*

To serve Youngtek, Fraserside hired a process server located in Cyprus who delivered a summons and complaint to Youngtek.  *See* Proof of Service/Affidavit, April 13, 2011 (docket no. 8).   Article 10 of the Hague Convention states that, "[p]rovided the State of destination does not object, the present Convention shall not interfere with . . . the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination." Hague Convention art. 10(c),  T.I.A.S. No. 6638, 20 U.S.T. 361, 1969 WL 97765; FED. R. CIV. P. 4 app. (A copy of the Hague Convention is attached to Rule 4 as an appendix).[4]   Where a signatory to the Hague Convention objects to service

---

[3](...continued)

> when service is to be effected outside a judicial district of the United States, the methods of service appropriate under an applicable treaty shall be employed if available and if the treaty so requires.

FED. R. CIV. P. 4 advisory committee's note.

[4]The Hague Convention is also available at a website maintained by the Hague Conference on Private International Law. *See  Hague Conference on Private International Law,* at http:// www.hcch.net/index—en.php?act=conventions.text & cid=17 (last visited July 7, 2011).

11

under Article 10, local methods of service are unavailable to the parties.[5] *Doe v. State of Israel,* 400 F. Supp. 2d 86, 103–04 (D.D.C. 2005). Cyprus, however, does not object to Article 10. *See Hague Conference on Private International Law,* Cyprus, Central Authority & practical information, http://www.hcch.net/index—en.php?act=authorities.details&aid=50 (last visited July 7, 2011) (website maintained by the Hague Conference on Private International Law states that Cyprus has "[n[o] opposition" to Article 10); PRACTICING LAW INSTITUTE, *Selected Materials In Int'l Litig. and Arbitration*, 704 PLI/Lit 559, 615 (2007) (text of Cyprus's Central Authority's agreement to service under Article 10). Fraserside's chosen process to serve Youngtek, therefore, may have been consistent with the Hague Convention. However, Youngtek objects to service on the ground that Tassos Kontos, the private process server Fraserside used, was not authorized by the Cyprus Supreme Court to serve process on it.

The burden of proving that process or service of process was insufficient lies with Youngtek as the party challenging the sufficiency of the service. *See S.E.C. v. Internet Solutions for Business Inc.*, 509 F.3d 1161, 1163 (9th Cir. 2007); *Burda Media, Inc. v. Viertel,* 417 F.3d 292, 299 (2d Cir. 2005); *Bally Exp. Corp. v. Ballicar, Ltd.,* 804 F.2d 398, 404 (7th Cir. 1986). In support of its position, Youngtek points to a copy of an email from Maria Pilikou, an associate in a Cypriot law firm, to Youngtek's counsel in which Pilikou reports "that according to Cyprus Civil Procedure Rules, a private process server must be authorized by the Supreme Court of Cyprus to serve process." *See* Pilikou e-mail at 1 (docket no. 15-8). Pilikou, however, does not state any basis for her legal

---

[5]Normally, the objection is made by the Central Authority of the foreign sovereign. *See* Hague Convention at Art. 4.

conclusion and cites no Cypriot law mandating or requiring that process servers be approved by the Cyprus Supreme Court. Youngtek has not supplemented Pilikou's e-mail with a citation to or a copy of any Cypriot law. Absent any supporting legal authority, Youngtek has not established that private process servers are required under Cypriot law to be authorized by the Cyprus Supreme Court. *See FROF, Inc. v. Harris,* 695 F. Supp. 827, 829 (E.D. Pa. 1988) ("a bare allegation by a defendant that he was improperly served cannot be allowed to bely the private process server's return"). Thus, I will not set aside Youngtek's default on this basis.

Even assuming, arguendo, that Cypriot law requires private process servers to be authorized by the Cyprus Supreme Court, Youngtek has not established that Kontos does not have such authorization. Pilikou simply reports in her e-mail:

> We have today conducted a search at the Supreme Court's Registry, with the assistance of the Court's officials, in relation to the registered private process servers and were unable to identify an authorized process server named 'Tassos Kontos' or 'Anastasios Kontos' or 'Kontos'.

Pilikou e-mail at 1. Youngtek, however, has not provided an affidavit from Pilikou setting out her background and qualifications, detailing her search, or identifying the "Court's officials" who aided in her search. Youngtek also has not provided any official Cypriot documentation which would support its assertion. Youngtek has not established that Kontos was unauthorized to serve process on it and I will not set aside Youngtek's default on this basis.

### 3.    *Setting aside default for good cause*

Youngtek argues, in the alternative, that the default should be set aside for good cause. Youngtek contends its delay in responding to the summons and complaint results, in part, from confusion caused by the service of those documents without an accompanying

13

Greek translation, coupled with the difficulties it experienced in locating and securing local Iowa counsel to represent it. Fraserside responds that Youngtek's conduct does not constitute excusable neglect warranting setting aside the default.

### a.    Legal Standards

Rule 55(c) expressly provides that "[t]he court *may* set aside an entry of default for good cause. . . ." FED. R. CIV. P. 55(c) (emphasis added); *see Stephenson v. El-Batrawi*, 524 F.3d 907, 912 (8th Cir. 2008) (quoting FED. R. CIV. P. 55(c)). "When examining whether good cause exists, the district court should weigh 'whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused.'" *Id.* (quoting *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998)). I examine each of these factors, in turn. In doing so, I am mindful that "default judgment is not favored by the law," *United States v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993), and "should be a 'rare judicial act.'" *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993) (quoting *Edgar v. Slaughter,* 548 F.2d 770, 773 (8th Cir. 1977)).

### b.    Analysis

### i.    Blameworthiness or culpability

First, I examine Youngtek's culpability or blameworthiness in failing to file a timely response to the complaint. I must "focus heavily on the blameworthiness of the defaulting party." *Johnson*, 140 F.3d at 784. I must also distinguish conduct that is "contumacious" or demonstrates an "intentional delay or disregard for deadlines and procedural rules," from conduct that involves only a "marginal failure to meet pleading or other deadlines." *Id.* (quotation marks omitted). The Eighth Circuit Court of Appeals has "rarely, if ever, excused the former." *Id.*

14

Youngtek's reason for its failure to file a timely response to the complaint is two fold.  First, Youngtek suggests that its response to the complaint was delayed because Fraserside did not provide it with a Greek translation of the summons and complaint at the time they were served.  This resulted in the importance of the summons and complaint not being immediately apparent to Youngtek's agent in Cyprus.  Under Article 5, paragraph 3 of the Hague Convention, if a document is to be served by the Central Authority or its agent, the Central Authority may require the document to be written in or translated into the official language or one of the official languages of the country.  Hague Convention, art. 5, T.I.A.S. No. 6638, 20 U.S.T. 361, 362, 1969 WL 97765.  "However, it is well-settled that the translation requirement is triggered only when it is the Central Authority that serves the document. . . ."  *Heredia v. Transport S.A.S., Inc.*, 101 F. Supp. 2d 158, 161 (S.D.N.Y. 2000); s*ee Taft v. Moreau*, 177 F.R.D. 201, 204 (D. Vt. 1997) ("Article 5 by its terms pertains only to service by the Central Authority or its designated agency, and imposes no requirements on service under Article 10."); *Lemme v. Wine of Japan Import, Inc.,* 631 F. Supp. 456, 464 (E.D.N.Y.1986) (noting that translation requirement triggered only when Central Authority serves document).[6]  There is no similar translation provision requirement under the alternative methods of service provided for in the Hague Convention.  *See Taft*, 177 F.R.D. at 204.  Documents served upon Cyprus residents or citizens under Article 10(a) need not be translated into Greek in order to comply with the Hague Convention.  *See Hague Conference on Private International Law,* Cyprus, Central

---

[6]The United States has the same translation requirement as Cyprus. *See Hague Conference on Private International Law*, United States, Central Authority and Practical Information, Translation Requirements, http:// www. hcch. net/ index_ en. php? act= authorities. details& aid= 279 (last visited  July 7, 2011). Thus, if a Cypriot plaintiff attempted to serve a complaint written in Greek on a United States citizen, it would be rejected.

Authority & Practical Information, http://
www.hcch.net/index—en.php?act=authorities.details & aid=50 (last visited July 7, 2011).
Here, Fraserside did not use the Cypriot Central Authority to serve the summons and
complaint on Youngtek, but opted, instead, for alternative service by a private process
server under Article 10(a). Therefore, the summons and complaint did not need to be
translated into Greek in order to comply with the Hague Convention. *See Taft*, 177 F.R.D.
at 204; *Lemme,* 631 F. Supp. at 464. That said, the lack of a Greek translation of the
summons and complaint clearly obscured the importance of those documents to Youngtek's
agent in Cyprus and this, in turn, affected its ability to respond to the complaint.

Second, Youngtek points to the difficulties it had in securing local counsel.
Youngtek initially consulted its European counsel and then contacted attorney Valentin
Gurvitis to retain him to represent it in this matter. Gurvitis's law firm is located in
Newton, Massachusetts. After he was formally retained, Gurvitis spent two weeks locating
qualified local counsel in Iowa. Gurvitis Aff. at ¶ 6 (docket no. 15-7). On June 17, 2011,
Gurvitis retained local counsel in Iowa. Gurvitis Aff. at ¶ 6. On this same date, Youngtek
filed its Motion To Set Aside Default.

Although Youngtek's conduct regarding its response to the summons and complaint
was negligent, it was not contumacious and does not demonstrate an intentional disregard
for the court's deadlines. This conduct does not weigh heavily in favor of a finding of
blame or culpability. *See id.* (stating that a failure to timely respond to a complaint is made
in good faith when there is a "relatively brief default in the filing of an initial pleading,
caused by poor communication" between defendant and another). I conclude Youngtek's
failure to timely respond to the summons and complaint was due to negligence—not an
intentional disregard for the court or its deadlines. Thus, I find Youngtek's negligence
weighs only slightly against setting aside the default.

16

### ii.    Youngtek's possible defenses

The second factor I must examine is whether Youngtek has a meritorious defense to Fraserside's claims. "Whether a meritorious defense exists is determined by examining 'whether the proffered evidence would permit a finding for the defaulting party.'" *Stephenson*, 524 F.3d at 914 (quoting *Johnson*, 140 F.3d at 785). "'The underlying concern is [. . .] whether there is some possibility that the outcome [. . .] after a full trial will be contrary to the result achieved by the default.'" *Id.* at 914 (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 2008)); *see also Jones v. Phipps,* 39 F.3d 158, 165 (7th Cir. 1994) ("A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis."). Any further mention of a "meritorious defense" is shorthand for a defense which raises a serious question about the propriety of the default. As the Eighth Circuit Court of Appeals explained in *Johnson,* the issue is whether the asserted defense "'would permit a finding for the defaulting party,' not whether it is undisputed." *Johnson,* 140 F.3d at 785 (quoting *Augusta Fiberglass Coatings, Inc.,* 843 F.2d at 812). A party should provide "a sufficient elaboration of facts or evidence to permit the district court to determine whether, if believed, the defenses [are] meritorious." *Stephenson*, 524 F.3d at 914

Youngtek asserts it has several defenses to Fraserside's lawsuit. First, Youngtek contends it is not subject to personal jurisdiction in Iowa. It points out Fraserside has not alleged any facts which would permit a court to find sufficient minimum contacts exist between Youngtek and Iowa such that Youngtek should reasonably anticipate being haled into court here. Youngtek asserts that it has no offices in Iowa, no employees in Iowa, and no agent of process in Iowa. Wijnveen Aff. at ¶¶ 3-4. Youngtek further contends it does

17

not advertise in Iowa, and no Youngtek officer or director has ever visited Iowa. Wijnveen Aff. at ¶ 5.

To establish jurisdiction, a defendant must have sufficient contacts with the United States as a whole to satisfy the due process requirements of the Fifth Amendment. This test is used to ensure that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 316 (1945). This determination includes: the burden on the defendant to litigate in the forum, the state's interest in settling the dispute, the plaintiff's interest in obtaining convenient and effective relief, the plaintiff's burden to litigate elsewhere, and the interstate judicial system's interest in efficient resolution of disputes. *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 105 (1987). Although Fraserside hotly disputes the merit of Youngtek's proffered defense, if one believes Youngtek's assertions, it has a potentially valid defense to Fraserside's lawsuit, which would be contrary to the result achieved by the default entry.

Youngtek further argues it has a meritorious affirmative defense under the Digital Millennium Copyright Act's ("DMCA") "safe harbor" provision found in 17 U.S.C. § 512(c). Youngtek maintains it has maintained a DMCA agent for service of takedown notices and has responded expeditiously to all properly submitted takedown notices. Youngtek contends Fraserside's complaint fails to assert that it ever issued a takedown notice to Youngtek. Youngtek argues that absent those allegations, Fraserside's complaint fails as a matter of law. Fraserside counters that Youngtek cannot claim safe harbor protection under § 512(c) because it did not have a DMCA agent listed with the United States Copyright Office.

Section 512(c) precludes imposing monetary liability on a "service provider . . . for infringement of copyright by reason of the storage at the direction of a user of material that

18

resides on a system or network controlled or operated by or for the service provider." 17 U.S.C. § 512(c)(1).  This protection is available only if the service provider satisfies a number of statutory requirements. For example, the service provider must not have actual knowledge that the material or an activity using the material on the relevant system is infringing, must not receive a direct financial benefit from infringing activity, and must expeditiously remove or disable access to material if it is notified that the material is infringing or is the subject of infringing activity. 17 U.S.C. § 512(c)(1)(A)-(C).  However, the limitations on liability established in § 512(c)  "apply to a service provider only if the service provider has designated an agent to receive notifications of claimed infringement. . . ." 17 U.S.C. § 512(c)(2); *see In re Aimster Copyright Litig.*, 252 F. Supp.2d 634, 661 n. 22 (N.D. Ill. 2002).  While Fraserside again contests the merit of Youngtek's proffered defense, if one believes Youngtek's assertions, then it has, again, asserted another potentially valid defense to Fraserside's lawsuit.  Thus, I conclude Youngtek has meritorious defenses to Fraserside's claims.  Accordingly, this factor weighs heavily in favor of setting aside the default entry.

### iii.    Whether Fraserside would be prejudiced

Finally, I must consider whether Fraserside would be prejudiced by setting aside the default entry. "[D]elay alone, or the fact the defaulting party would be permitted to defend on the merits, are insufficient grounds to establish the requisite prejudice to the plaintiff." *Stephenson*, 524 F.3d at 915 (citing *Johnson*, 140 F.3d at 785). "Setting aside a default must prejudice [the] plaintiff in a more concrete way, such as loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." *Id.* (citation and quotation marks omitted).  Fraserside does not argue that it would be prejudiced in any concrete way by setting aside the default entry.  Thus, I conclude that Fraserside would not be prejudiced by my setting aside the default entry.

19

### iv.    *Summary*

After considering the relevant factors, I conclude good cause exists to set aside the default entry.  Youngtek was negligent in its handling of the complaint; however, its failure to timely respond to the complaint was not intentional or contumacious.  Additionally, Youngtek has various potential meritorious defenses to Fraserside's claims and Fraserside has not pointed out that it would be prejudiced in any concrete way by setting aside the default entry.  Thus, I grant Youngtek's Motion to Set Aside Default.

### C.  *Motion For Default Judgment*

Because I find good cause exists to grant Youngtek's Motion to Set Aside Default, I need not address Fraserside's Motion for Default Judgment.  *See Johnson*, 140 F.3d at 783 ("[E]ntry of default must precede grant of a default judgment under Rule 55(b)[.]").  Therefore, I deny Fraserside's Motion for Default Judgment.

### III.  CONCLUSION

For the reasons discussed above, Youngtek's Motion To Set Aside Default (docket no. 15) is **granted** and the amended default entered by the Clerk of Court on June 2, 2011 (docket no. 13) is **set aside** pursuant to Rule 55(c) of the Federal Rules of Civil Procedure.  Fraserside's Motion for Default Judgment (docket no. 14) is **denied**.

**IT IS SO ORDERED.**

**DATED** this 12th day of July, 2011.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA