

ORDR

# DISTRICT COURT

# CLARK COUNTY, NEVADA

| | |
|---|---|
| CONSIPIO HOLDING BV, a corporation organized under the laws of The Netherlands, et al., | Case No.: A-10-622802-B <br> Dept. No.: **XI** |
| Plaintiffs, | |
| vs. | **FINDINGS OF FACT, CONCLUSIONS OF LAW** |
| PRIVATE MEDIA GROUP, INC., a Nevada corporation, et al., | **AND** |
| Defendants, | **PRELIMINARY INJUNCTION** |
| AND ALL RELATED ACTIONS. | |

Plaintiffs' Motion for Preliminary Injunction (the "Motion") came on for evidentiary hearing before the above-captioned Court on September 3, 20, 21, 22, 23, November 2 and 3, 2010. Plaintiffs appeared by and through Charles H. McCrea, Jr. (SBN #104) and Meredith Markwell (SBN #9203) of the law firm Lionel Sawyer & Collins. Defendant PRIVATE MEDIA GROUP, INC. ("PRVT") appeared by and through Robert A. Dotson (SBN #5285) of the law firm Laxalt & Nomura. The Court has reviewed the pleadings and papers on filed herein, considered the evidence presented and heard the arguments of counsel.

GOOD CAUSE APPEARING, the Court makes the following preliminary Findings of

Fact and Conclusions of Law[1] based upon the evidence presented in the evidentiary hearing conducted as part of the Motion for Preliminary Injunction:

## FINDINGS OF FACT

The Court preliminarily finds the following facts:

1. Plaintiff CONSIPIO HOLDING BV ("Consipio") is a corporation organized under the laws of The Netherlands.

2. Plaintiff ILAN BUNIMOVITZ ("Bunimovitz") is an individual.

3. Plaintiff TISBURY SERVICES INC. ("Tisbury") is a company organized under the laws of the British Virgin Islands.

4. Plaintiff CLAUDIO GIANASCIO ("Gianascio") is an individual.

5. Defendant PRIVATE MEDIA GROUP, INC. ("PRVT") is a Nevada corporation. PRVT is publicly traded on NASDAQ under the symbol "PRVT." There are 20,705,823 shares of PRVT common stock issued and outstanding.

6. Defendant BERTH H. MILTON, JR. ("Milton") is an officer (president) and director (chairman) of PRVT.

7. Defendant JOHAN CARLBERG ("Carlberg") is a director of PRVT.

8. Defendant PETER DIXINGER ("Dixinger") is a director of PRVT.

9. Defendant BO RODEBRANT ("Rodebrant") is a director of PRVT.

10. Defendant JOHAN GILLBORG is an officer (chief financial officer) of PRVT.

11. Defendant PHILIP CHRISTMAS is an officer (chief financial officer) of Milcap Media SL, PRVT's principal operating subsidiary.

12. PRVT does not have a principal place of business in the State of Nevada. PRVT's registered office in the State of Nevada is located at 3230 E. Flamingo Road, Suite 156, Las Vegas, Clark County, Nevada 89121. PRVT's resident agent is Gateway Enterprises, Inc. located at the same address.

---

[1] The Court notes that no party requested to advance the trial on the merits and although the parties have exchanged certain documents no depositions to date have occurred.

13. Consipio is a creditor of PRVT holding debt of a disputed amount, claimed by Consipio to be $5.5 million U.S. The loan forming the basis of the debt originated in 2002 is currently alleged to be in default and was originally secured by a pledge of 5,600,000 shares of PRVT common stock. The court has entered an order directing that the company allow Consipio to vote these shares unless and until there is a determination that the shares are no longer pledged to secure the loan.

14. Consipio's voting rights to 5,600,000 shares of PRVT common stock, represents 27.05% of PRVT's issued and outstanding shares.

15. Bunimovitz is the legal and beneficial owner and sole lawful holder of the voting rights to 1,875,951 shares of PRVT common stock, representing 9.06% of PRVT's issued and outstanding shares. Bunimovitz has been a shareholder of PRVT from January 20, 2009 to present.

16. Tisbury is the legal and beneficial owner and sole lawful holder of the voting rights to 2,781,029 shares of PRVT common stock, representing 13.43% of PRVT's issued and outstanding shares. Tisbury has been a shareholder of PRVT from May 14, 2009 to present.

17. Gianascio is the legal and beneficial owner and the sole lawful holder of the voting rights to one share of PRVT common stock. Gianascio has been a shareholder of PRVT from the time it was first listed on NASDAQ in 1998 to present.

18. Together, Plaintiffs are able pursuant to this Courts order to exercise the voting rights to 49.54% of PRVT's issued and outstanding shares of common stock.

19. In 2007, 2008 and 2009, PRVT reported net operating losses as of December 31 for each year of EUR 400,000, EUR 5.2 million and of EUR 20.5 million, respectively (roughly $535,000, $7.0 million and $26.6 million, respectively, at the current exchange rate). According to PRVT's Annual Report filed with the SEC for the year ending December 31, 2009, "the Company has suffered recurring losses from operations over the past years and has not yet reestablished profitable operations. These factors raise substantial doubt about its ability to continue as a going concern."

Case 3:11-cv-03005-MWB-LTS Document 39-5 Filed 11/07/11 Page 3 of 10

20. Milton has caused PRVT to make numerous substantial unsecured loans to himself and entities he controls. Currently, the amount of these loans total in excess of $10.0 million. These loans were not approved by the Board of Directors when made and Milton has made no attempt to repay them for at least the past five years. According to PRVT's Annual Report filed with the SEC for the year ending December 31, 2009, "[PRVT has] unsecured loans to Slingsby Enterprises Limited ("Slingsby"), an entity controlled by Mr. Milton (the "Slingsby Loans"). The Slingsby Loans bear interest at the rate of EURIBOR+1% per annum and have no maturity date. During 2009 the highest amount outstanding was EUR 7.25 million. As of December 31, 2009, and March 31, 2010, EUR 7.25 million and EUR 7.3 million, respectively, remained outstanding on these loans, including interest. No payments of principal or interest have been made in respect of the Slingsby Loans."

21. The Board Directors of PRVT has not demanded the repayment of the Slingsby Loans or caused PRVT to take steps to collect them.

22. Currently PRVT's business suffers from a lack of operating capital.

23. The Sarbanes-Oxley Act of 2002 (Sarbanes-Oxley Act of 2002, H.R. Rep. No. 107-610 (2002) the "SOX Act") was signed into law on July 30, 2002. A key provision of the SOX Act seeks to regulate and reform corporate conduct in the area of loans to directors and executive officers. Section 402 of the SOX Act makes it unlawful for any public company, "directly or indirectly, to extend credit, maintain credit or arrange for the extension of credit in the form of a personal loan to or for the benefit of any director or executive officer."

24. In 2009, Milton acting as the compensation committee for PRVT caused PRVT to pay him at least $625,000 that was not approved by the Board of Directors.

25. In March 2010, the Board of Directors concluded that the sum paid to Milton was excessive by $193,000 and retroactively approved a salary of $432,000.

26. This decision was protested by Milton and he threatened to resign and liquidate his interest in the company.

27. Rather than require Milton to repay the excess, however, the Board of Directors --

Case 3:11-cv-03005-MWB-LTS   Document 39-5   Filed 11/07/11   Page 4 of 10

improperly influenced by Milton and PRVT's U.S. Securities counsel, Samuel Guzik, Esq. ("Guzik")[2] -- modified the previous decision regarding bonus and permitted Milton to keep the excess, amounting to $193,000, as a "retention bonus" which Milton would be allowed to retain only if he remained with the company until at least December 31, 2011.

28. There is a pattern of Milton acting and then getting members of the Board of Directors to justify his actions after the fact.

29. Since December 2009, the Chief Executive Officer of PRVT, Plaintiff Bunimovitz, has been raising questions to the Board of Directors about Milton's actions and how they might constitute violations of the federal securities laws, fiduciary duties and other legal requirements.

30. On May 6, 2010 Milton called for Bunimovitz's termination.

31. On June 9, 2010 Milton wrote to the "independent" directors seeking authority to terminate Bunimovitz.

32. In June 2010, Bunimovitz's counsel sent a letter to the Board of Directors detailing his concerns.

33. Milton delivered a letter to Bunimovitz purporting to terminate him as PRVT's CEO "for cause."

34. Currently, Milton does not own or control a majority of PRVT's outstanding common stock.

35. In July 2010, a representative of Consipio met with Milton. One of the topics discussed in the course of the meeting was Milton's assertion that PRVT owed him a substantial amount of money as compensation for 5.6 million PRVT shares he had pledged as part of a loan from Commerzbank in 2001. The loan was acquired by Consipio in 2003 and is currently the subject of litigation between Consipio and PRVT. Milton claimed that PRVT owed him the

---

[2] Guzik testified he made that contact because he wanted the Board to understand the importance of retaining Milton and the availability of a retention bonus. In the prior report by the "independent" directors which was prepared after the consultation with a compensation expert, they specifically addressed each of these issues.

aggregate value of these 5.6 million shares as of the date of their pledge to Commerzbank in December 2001 with compound accrued interest at 9.9% since that date. Such an indemnification agreement is not mentioned in any of PRVT's SEC filings, is not reflected in the accounting records of PRVT and is not included in any of the documentation memorializing the Commerzbank loan. Milton's estimate of damages was in excess of $65 million. Milton stated further that he intended to cause PRVT to issue millions of shares of stock to himself personally to compensate himself for this perceived loss, thereby -- in his words -- ensuring that control of the Board of Directors remained with him. Milton further stated that his first step would be to terminate PRVT's CEO for cause. Once this action was completed, Milton stated that his next step would be to address his own compensation and the share issuance in his favor.

36. Without court intervention, a significant, illegal and highly dilutive share issuance to Milton appeared imminent, in part, causing this Court to issue a temporary restraining order.

37. At the current trading price of PRVT shares, the issuance of additional shares having a value of $65 million would equate to the issuance of more than 30 million new shares and would more than double the number of existing issued and outstanding shares of PRVT. This would dilute the holdings of existing shareholders by approximately 150%. Any such issuance would constitute a violation of Milton's fiduciary duties to PRVT and its shareholders who (other than Milton) would be diluted to the point of virtual non-existence. Such issuance of additional shares as threatened by Milton would cause irreparable harm to PRVT's shareholders (other than Milton) including Plaintiffs.

38. If any Finding of Fact is properly a Conclusion of Law, it shall be so deemed.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact, the Court reaches the following Conclusions of Law:

1. This Court has subject matter jurisdiction over this action under the Nevada Constitution, Article 6, § 6.

2. Venue is proper in this Court pursuant to NRS 13.040 and NRS 78.650(1).

3. PRVT is a publicly held company that must comply with stringent federal regulation and listing requirements which restrict the issuance of shares and protect against self dealing and misappropriation. The Court through this motion has found no violation of any such rule or law.

4. The Court has reviewed NRS 78.650 and has found that the requirements supporting the appointment of receiver under NRS 78.650 have not been met.

5. The modification of the recommendation of the independent directors regarding the treatment of the $193,000 of additional compensation received by Milton in 2009 is of concern to the court. The involvement of Mr. Guzik in obtaining a modification of this decision represents taint. The initial report of the independent directors on February 25, 2010 called for this amount to be returned to the company and after complaints were received by them and Milton threatened to resign, on March 3, 2010 they issued a supplemental report allowing the $193,000 to be treated as a retention bonus, that would be returned only if Milton left the company.

6. PRVT's extension of the Slingsby Loans for Milton's benefit constitutes a violation of Section 402 of the SOX Act.

7. PRVT has an obligation to its shareholders including Plaintiffs to make a determination without the influence of Milton and anyone he controls, regarding the Slingsby Loans and, to bring appropriate legal proceedings against Milton to collect the Slingsby Loans.

8. In 2009, Milton misappropriated at least $193,000 from PRVT. The attempt by PRVT's Board of Directors -- under improper influence by Milton and Guzik -- to retroactively approve this misappropriation as a "retention bonus" does not sanction it and does not release Milton from personal liability to PRVT to repay the misappropriated funds.

9. At this juncture, Plaintiffs have demonstrated a reasonable likelihood of success on the merits of their claims asserted in the First Amended Verified Complaint filed herein.

10. Plaintiffs have demonstrated that they could suffer irreparable harm if a preliminary injunction is not issued.

11. The balance of hardship between Plaintiffs and Defendants favors the issuance of a preliminary injunction.

12. The issuance of a preliminary injunction in this matter will not have a significant adverse impact on any public interest.

13. If any Conclusion of Law is properly a Finding of Fact, it shall be so deemed.

## PRELIMINARY INJUNCTION

Based on the foregoing Findings of Fact and Conclusions of Law, it is hereby

ORDERED, ADJUDGED AND DECREED that Plaintiffs' Motion for appointment of a Receiver pursuant to NRS 78.650 be and the same is hereby DENIED, however, the Court has determined that certain less restrictive supervision by this Court is appropriate related to the governance of this Nevada corporation.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs' Motion for Preliminary Injunction be and the same is hereby GRANTED.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that PRVT (including its subsidiaries and affiliates) and PRVT's officers, agents, servants, employees and attorneys and other persons who are in active concert or participation with anyone described in NRCP 65(d)(2)(A) or (B) are enjoined from holding or conducting any Special Meeting of its Board of Directors without prior order from this Court, which may be sought on shortened time pursuant to EDCR 2.26 with prior notice to all parties and counsel of record. And it is further

ORDERED, ADJUDGED AND DECREED that PRVT (including its subsidiaries and affiliates) and PRVT's officers, agents, servants, employees and attorneys and other persons who are in active concert or participation with anyone described in NRCP 65(d)(2)(A) or (B) shall be enjoined from (i) issuing any additional shares of stock (common or preferred), (ii) incurring any additional debt (outside of the ordinary course of business), (iii) disposing of any business assets

(outside of the ordinary course of business), (iv) making any loans to any officer or director of PRVT or any person or entity owned or controlled by any such officer or director, (v) closing, liquidating, transferring or withdrawing funds from (other than in the ordinary course of business) any bank or brokerage account, (vi) paying any bonus to any officer or director of PRVT, and (vii) undertaking any other act or transaction that is not in the ordinary course of business, without the prior approval of a majority of the disinterested members of the Board of Directors (with whom Milton, Guzik, Gillborg or Christmas shall not communicate regarding the transaction or decision at issue) at a duly noticed regular meeting of the Board of Directors or at a Special Meeting of the Board of Directors held in compliance with the requirements of this Preliminary Injunction as set forth above. And it is further

ORDERED, ADJUDGED AND DECREED that Plaintiffs are required to post security for the Preliminary Injunction in the amount of $25,000.00, which the Court acknowledges has already been posted as security for the Temporary Restraining Ordered entered herein on August 13, 2010. And it is further

ORDERED, ADJUDGED AND DECREED that this Preliminary Injunction shall remain in effect until further order of the Court.

DATED and DONE this 17th day of November 2010.

_____
DISTRICT COURT JUDGE

## Certificate of Service

I hereby certify that on or about the date filed, this document was copied through e-mail, or a copy of this Order was placed in the attorney's folder in the Clerk's Office or mailed to the proper person as follows:

Charles H. McCrea, Jr., Esq. (Lionel Sawyer & Collins)
Fax: 383-8845

Robert A. Dotson, Esq.
Laxalt & Nomura, Ltd.
9600 Gateway Drive
Reno, NV 89521
(775) 322-1170

Dan Kutinac