Chad Belville IA Bar 015731
4742 North 24th Street Suite 315
Phoenix, AZ 85016
602-904-5485
FAX 602-297-6953
cbelville@azbar.org
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
IN AND FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| FRASERSIDE IP LLC, )<br>      An Iowa Limited Liability Company )<br> )<br> )<br>vs. )<br> )<br> )<br>Youngtek Solutions Limited, dba EmpFlix, )<br>Dba TnaFlix, dba TnaFlix.com and John Does )<br>1-100 and John Doe Companies 1 - 100 )<br> ) | No. 11-cv-03005-MWB |

**PLAINTIFF'S RESISTANCE TO YOUNGTEK SOLUTIONS, LTD.'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**
_____

COMES NOW, Plaintiff Fraserside IP LLC, by and through its counsel, Chad Belville,

and RESISTS the Motion for Summary Judgment filed by Defendant Youngtek Solutions,

Limited ("Youngtek"). The Court should deny the Motion.

**Introduction**

Defendant is the owner and operator of two websites, tnaflix.com and Empflix.com.

Defendant's websites offer adult entertainment to users all over the world, and some 17 to 21

percent of their business is from United States residents. The websites are interactive, with users

connecting both to the host computer and to other users through that host computer. On these

websites, Defendant has displayed and permitted uploads of Plaintiff's videos, which are

1

copyrighted and trademarked under U.S. law. Despite these clear connections to the U.S., Defendant asserts that this Court has no personal jurisdiction over it. The facts of this case demonstrate that the Court does in fact have jurisdiction, and should deny Defendant's Motion for Summary Judgment.

**Facts**

Plaintiff is the owner of copyrights in high quality brand driven adult motion picture films. Plaintiff, on its own and/or as successor in interest or through its parent and/or sibling companies, is engaged in the business of producing, distributing, and/or licensing to others the rights to copy, distribute, transmit and exhibit those copyrighted films and/or other audio visual works. Plaintiff and/or its parent company expend significant amounts of time, money and other resources to produce high quality products, develop supply chains and distribution systems, and build premium brand recognition of their products. Plaintiff's Response to Youngtek Solutions, Ltd.'s Statement of Material Undisputed Facts And Plaintiff's Statement of Facts in Opposition to Youngtek's Motion for Summary Judgment ("Plaintiff's Statement of Facts"), ¶ A. Plaintiff is also the holder of certain Trademarks, including a depiction of two female silhouettes, the Private and Private Gold Labels and the Private Life of that have been actively promoted and marketed. As a result, the purchasing public has come to know, rely upon and recognize these marks as an international brand of high quality entertainment. Plaintiff's Statement of Facts, ¶ B.

Plaintiff, either directly or through affiliates or licensees, distributes its copyrighted works in various forms, without limitation, over the Internet, pay-per-view, video on demand, DVD's, and other formats, by selling them directly or indirectly to the home viewing market or licensing others to do so and through Internet streaming and download services. Plaintiff's Statement of Facts, ¶ C.

2

Defendant is the owner and operator of two websites, tnaflix.com and Empflix.com. Defendant's websites offer adult entertainment to users all over the world. Some 17 to 21 percent of their business is from United States residents. Users don't just view adult videos on the sites. Instead, they may upload their own videos, watch videos uploaded by others, download video and stream videos into their homes. Plaintiff's Statement of Facts, ¶ D. Those videos, when uploaded go from the user to storage on the host site which is in the Netherlands. Empflix.com offered and TNAFlix.com still offers a premium membership whereby users can get additional benefits, including interacting with other users on Defendant's sites. Plaintiff's Statement of Facts, ¶ E. The user may buy premium memberships as follows: a 3-day trial premium of $1.00, 1-month premium at $29.99, and a 1-year premium for $87.49. Plaintiff's Statement of Facts, ¶ F. The site encourages users to "become part of our growing community", "join", and says that a user can get "thousands of DVD high quality streaming movies as downloads, thousands of new scenes, multiview player free, one pass for all our videos at no extra cost, what you see is what you get, download manager, and 100% confidential." Plaintiff's Statement of Facts, ¶ G. After making payment, the user is then permitted to view premium content. *Id.* When a user purchases a premium membership at TNAFlix.com, he is purchasing it from TNAFlix.com, not a third party site. Plaintiff's Statement of Facts, ¶ H. Defendant targeted U.S. users for premium membership. Defendant sent e-mails to U.S. users about premium membership. Plaintiff's Statement of Facts, ¶ I.

The websites permit interaction between members of the site as well. A member may send a message to another member, who picks up the message when he logs into the site. All of these interactions happen entirely on the website. Plaintiff's Statement of Facts, ¶ J.

3

Defendant's websites are offering, displaying and distributing Plaintiff's films to its Internet Users. Plaintiff's Statement of Facts, ¶ K. Defendant knows, or has reason to know, that there is no proper license or authority to display and distribute Plaintiff's films on Defendant's websites and no proper license or authority to obtain commercial financial gain from such display and distribution. Nevertheless, Defendant is distributing, showing and receiving Plaintiff's films without proper license, and infringing on Plaintiff's copyright. Plaintiff's Statement of Facts, ¶ L.

Defendant's websites have a great number of users from Iowa. Between February 17, 2009 and February 17, 2011, over Two Million Iowa based users visited the website TNAflix.com. Plaintiff's Statement of Facts, ¶ M. In the same time period, 1,248,098 Iowa based users visited Defendant's website EMPFlix.com. *Id.* At least one Iowa resident has purchased a premium membership. Plaintiff's Statement of Facts, ¶ N. In addition, Seventeen to Twenty-one percent of the traffic to Defendant's websites is from U.S. users. Plaintiff's Statement of Facts, ¶ O. Further, Defendant hired an individual, David Sierra, in Florida, who performed services for Defendant. Plaintiff's Statement of Facts, ¶ P.

Defendant asserts essentially that Plaintiff is a shell company only recently formed and designed to obtain jurisdiction in Iowa. This is not relevant and not true. Fraserside is a fully developed and operating Iowa Limited Liability Company. It engages in business with Iowa residents. It is a member of its local Northwood Chamber of Commerce. It participates in local Chamber activities and is physically located in a main street building in Northwood, Iowa with real Iowans working there. The people working there are Northwood residents, and were previously unemployed. Fraserside is not just a legitimate Northwood, Iowa company; Fraserside is a good corporate neighbor. Plaintiff's Statement of Facts, ¶ Q.

**Legal Argument**

**I.      The Proper Vehicle to Challenge Personal Jurisdiction is a Motion to Dismiss Pursuant to Rule 12(b)(2), not a Motion for Summary Judgment**

Although the Eighth Circuit has not addressed it, other district courts in this Circuit have held that a motion for summary judgment for lack of personal jurisdiction is not theoretically proper. *Hicks v. Assistant Atty. Gen. of Colorado*, 08-0362-CV-W-FJG, 2010 WL 5067611 (W.D. Mo. 2010), citing Steven Baicker–McKee and William Janssen, *Federal Civil Rules Handbook* at 422 (2010 ed.) and *Pope v. Elabo GmbH,* 588 F .Supp.2d 1008, 1012 (D.Minn.2008). In general, "courts have ruled that summary judgment is an inappropriate vehicle for raising a question concerning ... personal jurisdiction...." *Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1012 (D. Minn. 2008), citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2713 at 235 & n. 45 (3d ed.1998).

The Court in *Pope* noted that "a court that lacks personal or subject-matter jurisdiction does not have power to enter *any* kind of a judgment-summary or otherwise." *Id*. The court, instead of entering judgment for lack of personal jurisdiction, dismisses without prejudice – "such a dismissal implies nothing about the merits of the dismissed claims because the court is not empowered to address the merits of the dispute. By contrast, a grant of summary judgment is a ruling on the merits, and thus has preclusive effect." *Id*.

The *Pope* court held therefore that a defendant challenging personal jurisdiction must do so by moving to dismiss under Rule 12(b)(2) and not by moving for summary judgment under Rule 56. *Id.* Accordingly, this Court may consider the Motion for Summary Judgment as one for dismissal under Rule 12(b)(2). *Id*.

With a motion to dismiss (as with a Motion for Summary Judgment) the Court must look at the facts in the light most favorable to the party opposing the motion, giving him the benefit of

5

all reasonable inferences, and grant the motion only if there is no genuine issue as to any material fact, so that the moving party is entitled to judgment as a matter of law. *Radaszewski by Radaszewski v. Telecom Corp.*, 981 F.2d 305, 309-10 (8th Cir. 1992). If the Court, upon reviewing the facts relevant to the issue of jurisdiction in the light most favorable to Plaintiff, and giving it the benefit of all reasonable inferences from these facts, finds that the record raises any genuine issue of fact material to the issue of jurisdiction, the court must deny the motion to dismiss.

## II.     The Court May Exercise Specific Jurisdiction Over Defendant

Iowa's long-arm statute extends personal jurisdiction over nonresidents to the fullest extent permissible under the Due Process Clause. See Iowa R. Civ. P. 1.306. *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir.1992) (per curiam).  Therefore, this Court only needs to examine whether the exercise of personal jurisdiction over Defendant comports with due process. *Hicklin*, 959 F.2d at 739.

"The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir.2008) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 (1984)). General jurisdiction arises when a defendant has carried on in the forum state a continuous and systematic, even if limited, part of its general business, and if so, the injury sued upon need not have any connection with the forum state." *Steinbuch*, 518 F.3d at 586. Here, Defendant has carried on continuous and systematic business with residents of Iowa, as it has sold and renewed memberships with numerous Iowans, resulting in continuous and systematic business contacts.

The "traditional territorial notions of personal jurisdiction, …have required re–examination in recent years in light of technological advances and the increasing globalization of

the economy. Commercial uses of the Internet, in particular, have tested the limits of a territorial–based concept of jurisdiction." Richard E. Kaye, J.D., Annotation, *Internet Web site activities of nonresident person or corporation as conferring personal jurisdiction under long– arm statutes and due process clause*, 81 A.L.R. 5th 41 (2000). "The continuous and illimitable presence of the internet has required fashioning special rules for applying the traditional due process test." *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 504 (S.D. Iowa 2007). This case is one such internet case which requires fashioning special rules for applying the traditional due process tests.

"When considering the sufficiency of internet contacts under a **specific** jurisdiction analysis, [the Eighth Circuit has] found the *Zippo* test instructive." *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010), citing *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704 (8th Cir.2003). Lakin, 348 F.3d at 710–11. In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, the court examined the issue of whether a website could provide sufficient contacts for specific personal jurisdiction. 952 F.Supp. 1119, 1124 (W.D.Pa.1997).

In *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997), the court devised a "sliding scale" approach to determine the nature and quality of the Internet activity. At one end of the spectrum, a defendant clearly does business over the Internet. Thus, "[i]f the defendant enters into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Zippo*, 952 F.Supp. at 1124. At the other end is the website that is passive, only making information available to the public, and providing no grounds for personal jurisdiction. In the middle are cases of interactive websites allowing users to exchange information with the host computer. *Id*. Here, it is clear that Defendant has a substantial number of Iowa users, who are buying

7

memberships, engaging with the website, and transmitting credit card information as compensation for access to computer files that reside on the host computer operated by Defendant, as well as uploading their own videos to the host computer.

In *Lakin,* the Eighth Circuit "agree[d] with our sister circuits that the Zippo model is an appropriate approach in cases of **specific** jurisdiction-i.e., ones in which we need only find 'minimum contacts.'" *Lakin*, 348 F.3d at 711. As *Zippo* teaches, defendants using websites to enter into contracts with residents and engage in knowing and repeated transmission of Internet files can constitute the purposeful availment of the privilege of acting in a forum state, subjecting the Defendant to personal jurisdiction.

In *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir.2002), a trademark infringement case, the court found that establishment of a paid area accessible only to members is characteristic of a website with a high degree of interactivity. *See Neogen*, 282 F.3d at 890-91. The Court held that Neogen had presented a prima facie case that NGS transacted business in Michigan by showing the interactive nature of the website. "The granting of passwords to Michigan residents as part of a contract for NGS's services is an interactive usage showing that NGS has intentionally reached out to Michigan customers and enabled them to use NGS's services from Michigan." Thus, the court found it appropriate to exercise specific jurisdiction over the defendant, NGS. *Id.*

Likewise, in *Bird v. Parsons*, 289 F.3d 865, 874-875 (6th Cir. 2002), the Sixth Circuit court held that the defendants, by maintaining a website on which Ohio residents could register domain names and by allegedly accepting the business of Ohio residents, satisfied the purposeful-availment requirement and were subject to specific jurisdiction. There, the fact that the defendant regularly chose to do business with Ohio residents was sufficient. *Id.* The facts are

the same here.  Iowa residents are doing business with Defendants on a regular basis, paying for memberships in order to gain special viewing privileges which permit them to view videos located on the host computer.

Defendant's website is not a mere passive website such as those at the bottom of the Zippo sliding scale. The TNAFlix and EMPFlix websites owned by Defendant do much "more than make information available to those who are interested in it." *Zippo Mfg.*, 952 F.Supp. at 1124. The website falls on that end of the spectrum "where a defendant clearly does business over the Internet" by "enter[ing] into contracts with residents of a foreign jurisdiction that involve knowing and repeated transmission of computer files over the Internet," and thus, specific personal jurisdiction is proper. *Id.*

Defendant encourages the interaction between its members, sells memberships on one website, and allows the uploading of videos. Members have access to videos not available non-members. The websites encourage members to set up their own profiles, become involved with other users, and interact with the host computer to do so. Users have 24 hour access to its content. The websites also provide for ongoing interaction with the host computer by permitting uploads to the host computer, and downloads of premium videos from the host computer. The interaction between users and the websites includes substantial interaction with Iowa users. Over 2,000,000 Iowa users visited  TNAflix and over 1,248,000 visited EMPflix during the two year period from February 2009 to February 2011. At least one Iowa resident has purchased a premium membership. Based on these substantial contacts, Defendant simply cannot show that this Court does not have personal jurisdiction.

Many courts have found that purposeful availment arises from offering products over the Internet. In *Jagex Ltd. v. Impulse Software*, 750 F. Supp. 2d 228, 233 (D. Mass. 2010) the court

found that an interactive website that permitted Massachusetts users to exchange payment information for software codes ("Bots") to use in a game was sufficient to exercise jurisdiction. The court there noted that even though "defendants do not specifically seek out Massachusetts customers, they do not bar them or discourage them from purchasing Bots." The court also found it significant that defendants' websites were not "passive" in nature and that Massachusetts residents used the websites to sign electronic agreements with the defendants and to purchase and use their products. Accordingly, the Court found that defendants had purposefully availed themselves of the privileges of conducting business in Massachusetts.

One district court in the Eighth Circuit has likewise found jurisdiction in the state where Plaintiff resides when infringing products are available on the Internet. In *Furminator, Inc. v. Wahba*, 2011 WL 3847390 (E.D. Mo. 2011), the court noted that even in the Eighth Circuit, when the cause of action involves a tortious act, a plaintiff may obtain specific jurisdiction over a nonresident defendant using the *Calder* effects test. As the court noted "[i]n applying the effects test, the economic injury in trademark infringement cases occurs in the state where the trademark owner has its principal place of business." *Id*. The court did not find that general jurisdiction existed, but that it could exercise specific jurisdiction. The Plaintiff, FURminator, made a prima facie showing that Wahba and Koch knew that the products in question that they sold on eBay.com or Amazon.com were available to Missouri residents, were in fact sold to at least one Missouri resident (Plaintiff), and more-importantly, were counterfeit, infringing on a Missouri company's trademark.

Every dispositive element from that matter and more exist in this case. Here, Defendants have admitted even greater contacts with Iowa residents. TNAFlix has enjoyed the financial benefit of over 2,000,000 visits from Iowa residents and 1,248,000 visits at EMPFlix to view and

10

upload videos, interacting with Defendant's host computer. These visits give the Defendant

websites value, as greater website traffic increases the premium that must be paid to place

advertising on a popular website. Others have paid Defendant for access to TNAFlix and have

interacted with the host computer to view the premium content for which Defendant received

compensation. This is a much greater level of interaction than found in *FURminator*, and more

than sufficient to permit the Court to exercise specific jurisdiction over Defendants in this case.

The cases cited by the Missouri District Court in *Furminator, Inc. v. Wahba* seem to

show a more modern trend toward asserting jurisdiction where the Internet infringement affects a

resident of the state. The Court cited *3M Co. v. Mohan*, 2010 WL 786519, 1–3 (D. Minn. 2010)

as holding that the court had specific personal jurisdiction over a nonresident defendant that used

eBay.com and Amazon.com to sell products which allegedly infringed trademarks and patent

held by the resident plaintiff; *Bose Corp. v. Neher*, 2010 WL 3814886 (D. Mass. 2010) as

holding that the court had specific personal jurisdiction in an infringement case over defendants

who allegedly violated a forum company's trademark by posting infringing products on

eBay.com, even absent proof of specific sales to forum residents; and *Zen Design Group, Ltd. v.*

*Clint*, 2009 WL 4050247, 3 (E.D. Mich. 2009) where the court ruled that the accused patent

infringer's offering of a product for sale on an eBay internet auction to residents of the forum

created personal jurisdiction for the infringement claim.

The *Furminator* court also cited the Eighth Circuit Court of Appeals' decision in *Dakota*

*Industries, Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991) to support its

findings. In *Dakota Industries, Inc. v. Dakota Sportswear, Inc.*, the Plaintiff, Dakota Industries, a

company located in South Dakota, claimed trademark infringement by Dakota Sportswear.

Sportswear had no offices, outlets, agents or employees in the forum state (South Dakota), and

had never marketed or advertised in South Dakota, and never directly or indirectly shipped products into South Dakota. The evidence showed, however, that the end purchasers of Sportswear's clothing were located throughout the entire United States. Further, major chains carried Sportswear clothing, and thus, if the chains to which Sportswear sold had outlets in the forum state (South Dakota), Sportswear's clothes <u>could</u> be shipped there.

The Court cited *Calder* for the proposition that the defendant's lack of control over distribution of the product in the forum state would not bar jurisdiction when the plaintiff has alleged an intentional tort. *Id*., citing *Calder* at 789-90, 104 S.Ct. at 1487. The evidence showed that there was some "passing off" (where the deceived customer buys the defendant's product believing it is the plaintiff's) of Sportswear's infringing clothing in South Dakota. This fact, along with the fact that Industries' principal place of business was in South Dakota, demonstrated that "Sportswear's actions were uniquely aimed at the forum state and that the 'brunt' of the injury would be felt there, as required by *Calder*. The court noted that in the *Calder* case the allegedly wrongful act of running a defamatory article on a movie star was more directly aimed at the plaintiff and her work in the forum state than in Dakota Sportswear. It noted that the defendant the National Enquirer had its biggest circulation in California and thus a stronger sales presence in the forum state than Dakota Sportswear did. However, the court found that the distinctions did not prevent the applicability of Calder to the facts of the case. *Dakota Indus., Inc*., 946 F.2d at 1391. The court found that under the circumstances enumerated there, Sportswear 'must reasonably anticipate being haled into court' in South Dakota." *Id*.  The Court therefore held that Plaintiff had made a prima facie showing of personal jurisdiction, reversed the dismissal and remanded for further proceedings.

In *Dakota*, the Eighth Circuit also made special note of two Ninth Circuit Court of Appeals cases that held that jurisdiction may be proper when defendant's only contact with the forum state is the "purposeful direction" of a foreign act having effect in that state: *Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir.1989); *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392, 1397 (9th Cir.1986). It is safe to presume that the court would have followed the analysis in *CYBERsitter* and came to the same conclusion: that exercising personal jurisdiction is proper.

The facts of this case are comparable to those in *Dakota*. Here, as in the Internet cases, Defendant maintains interactive websites where users in the U.S. pay a fee for Defendant to distribute Plaintiff's videos to them, causing injury to Plaintiff, an Iowa corporation. Further, Defendants have accepted the business of Iowa residents, taking credit cards from Iowa residents and providing membership to their websites to permit viewing of upgraded videos and downloading of premium versions of videos, including pirated videos copyrighted and owned by Plaintiff. Plaintiff also has Iowa customers, and Defendants are competing for these customers with their website. By these activities, Defendants have purposefully directed its activities at Iowa residents (including Plaintiff) and purposefully availed itself of the privilege of doing business in Iowa as required for specific jurisdiction.

For the court to exercise specific jurisdiction, it must also find that the plaintiff's action arises out of or relates to the defendant's forum-related activities. *Lakin, supra*. Here, the activities of defendant – allowing Iowa residents to view the Plaintiff's pirated videos – is exactly what Plaintiff sues for in this action. Consequently, the elements of specific personal jurisdiction are met in this case, and the Court may exercise jurisdiction over Defendant. The court should therefore deny the Motion to Summary Judgment/ Motion to Dismiss.

**III.    The Court Should Exercise Jurisdiction Under Rule 4(k)(2), F.R.Civ.P.**

An alternative giving this court jurisdiction exists in a case such as this, where Defendants have asserted that jurisdiction is only proper in another country. Rule 4(k)(2), F.R.Civ.P. closes the loophole in personal jurisdiction that formerly allowed a non-resident defendant with insufficient "minimum contacts" in any individual state but sufficient contacts with the United States as a whole, to escape jurisdiction in all fifty states. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414 (Fed. Cir. 2009).

Rule 4(k)(2), commonly known as the federal long-arm statute,  states that as to claims arising under federal law, "serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and(B) exercising jurisdiction is consistent with the United States Constitution and laws." The Rule, in essence, applies to "foreign defendants lacking sufficient contacts with any single state [who] could ... avoid responsibility for civil violations of our federal laws." *Getz v. Boeing*, 654 F.3d 852, 858 (9th Cir.2011). It was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist. *See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed.Cir.2009), citing Fed.R.Civ.P. 4(k)(2) advisory committee notes to 1993 amendment.

As to the first requirement, that the case is brought under federal law, Plaintiff's claims under the Lanham act and trademark and copyright infringement statutes are clearly federal law claims. As to the second requirement, that defendant is not subject to jurisdiction in any single state, the D.C., Federal, Fifth, Seventh, Ninth and Eleventh Circuits have adopted an approach that places the burden of proof of this element on the defendant. *See Oldfield v. Pueblo De Bahia Lora*, S.A., 558 F.3d 1210, 1219 n. 22 (11th Cir.2009); *Touchcom, Inc. v. Bereskin & Par*r, 574

F.3d 1403, 1415 (Fed. Cir. 2009); *Adams v. Unione Mediterranea DI Sicurta*, 364 F.3d 646, 651

(5th Cir. 2004); *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005); *ISI Int'l, Inc. v. Borden*

*Ladner Gervais LLP*, 256 F.3d 548, 551-52 (7th Cir.2001); *Holland Am. Line Inc. v. Wartsila N.*

*Am., Inc.*, 485 F.3d 450, 461 (9th Cir.2007); Under that approach, a court is entitled to use Rule

4(k)(2) to determine whether it possesses personal jurisdiction over the defendant unless the

defendant names a state in which the suit can proceed. As the Seventh Circuit noted, "A

defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in

which the suit could proceed. Naming a more appropriate state would amount to a consent to

personal jurisdiction there.... If, however, the defendant contends that he cannot be sued in the

forum state and refuses to identify any other state where suit is possible, then the federal court is

entitled to use Rule 4(k)(2)." *ISI Int'l*, 256 F.3d at 552 (citations omitted).

As the Federal Circuit noted in *Touchcom* the purposes of Rule 4(k)(2) – to prevent

defendants with nationwide minimum contacts from avoiding jurisdiction here – are best

achieved when the defendant is afforded the opportunity to avoid the application of the rule only

when it designates a suitable forum in which the plaintiff could have brought suit. The courts

should not require a plaintiff to aver that there is no state in which defendant is subject to

jurisdiction, as it negates the ability to plead that there is jurisdiction in the state where the action

was brought. "An approach that forecloses alternative arguments appears to conflict with the

Federal Rules of Civil Procedure. See Fed.R.Civ.P. 8(d)(2) ("A party may set out 2 or more

statements of a claim or defense alternatively or hypothetically, either in a single court or defense

or in separate ones")." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d at 1415.

Here, Defendant attempts to escape jurisdiction by asserting that Plaintiff must prove

there is no state where Defendant is subject to jurisdiction. In fact, the reverse is true. If

Defendant will not name a state where it concedes it is subject to jurisdiction, then the Court may analyze whether exercising jurisdiction in the United States comports with due process. Here, it does.

Looking at the entire United States, it is clear that Defendant does business with United States residents, targets its products at United States residents and has knowingly and intentionally infringed on the trademarks and copyrights of United States companies. The quantity of contacts is substantial – some 17 to 20 percent of its visitors are U.S. residents. The website, in English, collects its membership fees in U.S. Dollars and advertises to United States users. Defendant admits targeting U.S. users for premium membership through an e-mail campaign. Defendant has used a Florida employee/contractor for work related to its websites and a California registrar called NameCheap for its domains. The Defendant has ample contacts with the U.S. that justify this Court exercising jurisdiction under Rule 4(k)(2).

These facts clearly show that the factors the Eighth Circuit requires courts to examine to determine jurisdiction are met:

(1) The nature and quality of the contacts with the forum state – clearly Defendant has ongoing relationships with its United States users.

(2) The quantity of the contacts – 17 to 20 percent of its visitors are U.S. residents. It is believed a far higher percentage are fee paying members of the site.

(3) The relationship of the cause of action to the contacts – The cause of action for trademark and copyright infringement is dependent on the fact that Defendant's contacts with the U.S. are for the purpose of displaying Plaintiff's infringed films.

(4) The interest of the United States in providing a forum for its residents – the very existence of Rule 4(k)(2) shows that the U.S. wants to assure that a foreign defendant cannot

engage in business in the U.S. yet escape suit here. Further, it is U.S. copyrights and trademarks that are being protected here.

And (5) The convenience or inconvenience to the parties – again, with significant business in the U.S. and website traffic coming from the United States, defendants can hardly claim inconvenience. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010)

The Court is to look at all of the factors in the aggregate and examine the totality of the circumstances in making a personal-jurisdiction determination. *Id.* Here, there is no question that these Defendant is doing business in an ongoing, systematic way, taking U.S. dollars from U.S. residents and infringing on a U.S. company's U.S. trademarks and copyrights that are protected by U.S. law. For the Court to refuse to exercise jurisdiction would violate the purpose of Rule 4(k)(2).

The Court should exercise jurisdiction in this case unless Defendant designates another state it concedes has jurisdiction over it.

## Conclusion

Plaintiff seeks redress for Internet copyright and trademark infringement. It is difficult to track down and bring to justice entities that parlay digital files on the Internet while hiding in other countries, and Defendant seeks to make this difficult task even more so. The Defendant claims it has no connection to Iowa, but yet has received over 2,000,000 visits from Iowa surfers on one site and 1,248,000 on the other. Iowans are visiting these sites over a million times per year and buying memberships from Defendant as well as buying products or services advertised on Defendant's websites.  Defendant is properly and fairly under the jurisdiction of this Court, as due process is met because Defendant purposely availed itself of doing business in Iowa. The Court should exercise jurisdiction over Defendants.

In addition, the Court may also exercise jurisdiction under Rule 4(k)(2), F.R.Civ.P. unless Defendant specifies another state where it is subject to jurisdiction. The Court should exercise jurisdiction over Defendant and permit Plaintiff to go to trial in this Court.

Date: November 20, 2012.                           Respectfully submitted,


By:      /s/ Chad L. Belville
Chad Belville, Attorney at Law
Iowa Bar # 015731
4742 North 24th Street Suite 315
Phoenix, AZ 85016

P.O. Box 17879
Phoenix, AZ 85011
Telephone: 602-904-5485
FAX: 602-297-6953
E-mail cbelville@azbar.org


ATTORNEY FOR PLAINTIFF


**Certificate of Service**

I, Chad Belville, Attorney for Plaintiff, hereby certify that on November 20, 2012 a copy of this Resistance was served upon the Attorneys for Defendants, listed as Connie M. Alt, Jennifer Rinden, Valentin Gurvits, and Evan Fray-Witzer, through the Court's Electronic Case Filing System.


/s/ Chad L. Belville