**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

FRASERSIDE IP, L.L.C.,

                Plaintiff,

vs.

YOUNGTEK SOLUTIONS, LTD, d/b/a
EMPFLIX, d/b/a
WWW.EMPFLIX.COM, d/b/a
TNAFLIX.COM AND
WWW.TNAFLIX.COM, JOHN DOES 1-
100, and JOHN DOE COMPANIES 1-
100,

                Defendant.

No. C11-3005-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING DEFENDANT
YOUNGTEK SOLUTIONS, LTD.'S
MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION**

———————————————

**TABLE OF CONTENTS**

I.    *INTRODUCTION AND BACKGROUND*................................................2
    *A.   Procedural Background* ...........................................................2
    *B.   Factual Background* ...............................................................3

II.   *LEGAL ANALYSIS* ......................................................................6
    *A.   Proper Motion For Challenging Personal Jurisdiction*......................6
    *B.   Rule 12(b)(2) And Personal Jurisdiction Standards* .........................8
    *C.   Personal Jurisdiction Analysis* ...............................................13
         *1.   General jurisdiction* ....................................................13
         *2.   Specific jurisdiction* ...................................................18
    *D.   Federal Long-Arm Statute* .....................................................21
         *1.   Claims arising under federal law*....................................23
         *2.   No state with personal jurisdiction over defendants* ...............23
         *3.   Due process*.............................................................26

III.  *CONCLUSION* ..........................................................................29

Plaintiff, the owner of copyrights and trademarks for adult motion pictures, alleges that defendant, a Cyprus corporation, has willfully violated plaintiff's copyright and trademarks by offering plaintiff's motion pictures on Internet websites it operates. However, the merits of plaintiff's claims are not presently before me.  Rather, I must resolve, *inter alia*, whether plaintiff has made a prima facie showing that defendant has sufficient minimum contacts with Iowa to satisfy due process and permit the exercise of personal jurisdiction over it under Iowa's long-arm statute, or whether its contacts with the United States as a whole, as distinct from contacts with Iowa, are sufficient to permit the exercise of personal jurisdiction over it under the federal long-arm statute.

## I.   INTRODUCTION AND BACKGROUND

### A.   Procedural Background

On February 17, 2011, plaintiff Fraserside IP L.L.C. ("Fraserside") filed a complaint against Youngtek Solutions, Ltd. ("Youngtek"), John Does, and John Doe Companies, alleging the following causes of action: copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 et seq.; contributory copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 et seq.; vicarious copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 et seq.; inducing copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 et seq.; trademark infringement, in violation of 15 U.S.C. § 1114; contributory trademark infringement, in violation of 15 U.S.C. § 1114; vicarious trademark infringement, in violation of 15 U.S.C. § 1114; false designation of origin, in violation of 15 U.S.C. § 1125(a); and, dilution of trademark, in violation of 15 U.S.C. § 1125(c).

On April 19, 2012, Youngtek filed its Motion For Summary Judgment On Personal Jurisdiction (docket no. 47).  Youngtek claims that it lacks connections with Iowa or the United States which would subject it to jurisdiction in the Northern District

of Iowa.  In response to Youngtek's motion, Fraserside requested an extension of time to take additional discovery, pursuant to Federal Rule of Civil Procedure 56(d)(2). Fraserside's request was granted.  On December 5, 2012, Fraserside filed its resistance to Youngtek's motion.  Fraserside initially argues that a motion for summary judgment for lack of personal jurisdiction is not theoretically possible and that I should consider Youngtek's motion a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil procedure 12(b)(2).  On the merits, Fraserside argues that Youngtek's internet activities establish a sufficient basis for specific personal jurisdiction under Iowa's long-arm statute.  Fraserside, alternatively, argues that, even if it did not make a prima facie showing of personal jurisdiction under Iowa's long-arm statute, personal jurisdiction exists under the federal long-arm statute found in Federal Rule of Civil Procedure 4(k)(2).  On December 10, 2012, Youngtek filed its reply brief.

### B.     *Factual Background*

I set out only those facts, disputed and undisputed, sufficient to put in context the parties' arguments concerning Youngtek's motion.  Unless otherwise indicated, the facts recited here are undisputed.  I will discuss additional factual allegations, and the extent to which they are or are not disputed or material, if necessary, in my legal analysis.

Plaintiff Fraserside is a wholly owned subsidiary of Fraserside Holdings, Ltd. ("Fraserside Holdings"), a Cyprus based company.  Fraserside Holdings is a wholly owned subsidiary of Private Media Group, a publicly traded company, incorporated in Nevada with its corporate headquarters in Barcelona, Spain.  Fraserside was incorporated in Iowa on October 20, 2010.

Defendant Youngtek is also a Cyprus based company.  Youngtek does not have, and has never had, offices in Iowa or the United States.  Youngtek does not have, and

has never had, a telephone number in Iowa or the United States. Youngtek does not have, and has never had, any employees in Iowa or the United States. Youngtek did hire David Sierra, a Florida contractor, to perform "minor development work" for it in 2009 in Florida. Youngtek's App. at 126; Youngtek's Answer to Interrog. 16(e). The record does not disclose the details of Sierra's work. Youngtek does not have, and has never had, an agent for service of process in Iowa or the United States. Youngtek does not maintain, and has never maintained, servers in Iowa or the United States. No Youngtek officer or director has ever visited Iowa.

In February 2011, at the time the alleged copyright and trademark infringements occurred, the publicly available records listed the Cyprian entity, Fraserside Holdings, as the owner of the copyrights at issue, and Cine Craft, Ltd., a Private Media Group subsidiary located in the United Kingdom, as the owner of the trademarks at issue. On the date this lawsuit was filed, searches of both the United States Copyright Office and United States Patent and Trademark Office showed that Fraserside had no registered copyrights or trademarks.

Fraserside currently is the owner of copyrights in adult films. Fraserside is engaged in the business of distributing, and/or licensing the rights to copy, distribute, transmit, and exhibit those adult films. Fraserside and/or its parent company expend significant time, money and other resources to produce high quality products, develop supply chains and distribution systems, and build premium brand recognition for their products. Fraserside is the current holder of certain trademarks, including a depiction of two female silhouettes, the Private and Private Gold Labels, and the Private Life.

Fraserside directly, or through affiliates or licensees, distributes its copyrighted works in various forms including over the internet, pay-per-view, video on demand, and DVD's by direct and indirect sales to the home viewing market, and through internet streaming and download services.

Youngtek owns and operates the websites TNAflix.com and empflix.com. Visitors to the two websites can upload, download, and watch movies. When videos are uploaded, they go from the user to storage on the host site which is in the Netherlands. TNAflix.com and empflix.com both offered premium memberships. The user could purchase a three-day trial premium membership for $1.00, a one-month premium membership for $29.99, or a one-year premium membership for $87.49. The websites stated that users "become part of our growing community" and that a user could get "thousands of DVD high quality streaming videos as downloads, thousands of new scenes, multiview player free, one pass for all our videos at no extra cost, what you see is what you get, download manager, and 100% confidential." After making payment, the user was permitted to view premium content. Premium members could also interact with other users on Youngtek's websites. A member could send a message to another member, with that member picking up the message when logging onto the site. All of these interactions occurred entirely on the website. One person with an Iowa IP address purchased a three-day premium membership for one of Youngtek's websites for one dollar.[1] Youngtek sent e-mails about premium memberships to individuals who were already premium members. Premium memberships are no longer offered on either website. Youngtek's websites are offering, displaying, and distributing Fraserside's films to the websites' users.

During the two year span between February 17, 2009 and February 17, 2011, the TNAflix.com website had 2,197,104 visits from Iowa users. This number represents 0.14% of all visits to the site during that time period. During this same time, the empflix.com website had 1,248,098 visits from Iowa users. This number reflects 0.17% of all visits to the site during that time period. These numbers reflect

---

[1] The record does not reflect which website.

only the gross number of visits to the websites.  The number of users making the visits is not in the record.

## II.     LEGAL ANALYSIS

### A.     Proper Motion For Challenging Personal Jurisdiction

Arguing that the court lacks personal jurisdiction over it, Youngtek has styled its motion as a motion for summary judgment.   Fraserside argues that a motion for summary judgment for lack of personal jurisdiction is not theoretically possible and that I should consider Youngtek's motion as a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil procedure 12(b)(2).   Youngtek does not contest Fraserside's argument, suggesting that the styling of its motion matters little to the substantive outcome.   *See Radaszewski v. Telcom Corp.*, 981 F.2d 305, 310 (8th Cir. 1992) (observing "the facts adduced in a Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction must be viewed in the light most favorable to the party opposing the motion, there must nonetheless be some evidence upon which a prima facie showing of jurisdiction may be found to exist, thereby casting the burden upon the moving party to demonstrate a lack of personal jurisdiction.   This is the same standard as the one we apply on motions for summary judgment under Rule 56.").

Courts have held that a motion raising lack of personal jurisdiction as a defense should be considered a motion to dismiss under rule 12(b)(2) and not a summary judgment motion under rule 56.   *See Pope v. Elabo GmbH*, 588 F. Supp.2d 1008, 1012 (D. Minn. 2008*); see also Hicks v. Assistant Atty. Gen. of Colo.*, No. 08-0362-CV-W-FJG, 2010 WL 5067611, at *3   (W.D. Mo. Dec. 6, 2010); *Robinson v. Western NIS Enter. Fund*, No. C97-41-MJM, 1999 WL 33656834, at *1 (N.D. Iowa Mar. 31, 1999); *Lavrov v. NCR Corp.*, 600 F. Supp. 923, 929 (D.C. Ohio 1984); *cf. Beacon*

6

*Enter., Inc. v. Menzies*, 715 F.2d 757, 762 n.5 (2d Cir. 1983) (recognizing that "a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), rather than a motion for summary judgment, Fed.R.Civ.P. 56, is the more appropriate procedural vehicle for contesting personal jurisdiction."); *United States v. 3 Parcels in La Plata Cnty.*, 919 F. Supp. 1449, 1452 (D. Nev. 1995) (observing that contests over the existence of personal jurisdiction "are more properly resolved by motion to dismiss."). The *Pope* decision offered this cogent explanation:

> As the leading treatise observes, "[i]n general, courts have ruled that summary judgment is an inappropriate vehicle for raising a question concerning … personal jurisdiction.…" 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2713 at 235 & n. 45 (3d ed. 1998) (hereinafter Federal Practice and Procedure). This makes sense, as a court that lacks personal or subject-matter jurisdiction does not have power to enter any kind of a judgment-summary or otherwise. *See id.* at 239 ("If the court has no jurisdiction, it has no power to enter a judgment on the merits and must dismiss the action."). That is why a dismissal for lack of personal or subject-matter jurisdiction is always without prejudice; such a dismissal implies nothing about the merits of the dismissed claims because the court is not empowered to address the merits of the dispute. By contrast, a grant of summary judgment is a ruling on the merits, and thus has preclusive effect. *See EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046, 1048-49 (3d Cir.1993) ("A grant of summary judgment and a dismissal for lack of personal jurisdiction, however, are wholly different forms of relief. The latter is a dismissal without prejudice, whereas the former is a ruling on the merits which if affirmed would have preclusive effect.") (citation omitted).

*Pope*, 588 F. Supp.2d at 1012.

I also note that Rule 12(d) does not require that a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction be treated as a motion for summary judgment if

matters outside the pleadings are presented.   Instead, Rule 12(d) only requires that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); *see Attwell v. Lasalle Nat'l Bank*, 607 F.2d 1157, 1161 (5th Cir. 1979) ("The language of Rule 12, on conversion of motions, is very express in limiting its application to 12(b)(6) motions."). Therefore, while Youngtek has styled its motion as a motion for summary judgment, I will consider the motion a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).

### B.    Rule 12(b)(2) And Personal Jurisdiction Standards

In considering Youngtek's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2),  Fraserside's Complaint "must state sufficient facts . . . to support a reasonable inference that [each defendant]  may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008). "'Once jurisdiction ha[s] been controverted or denied, [plaintiffs] ha[ve] the burden of proving such facts.'" *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004) (quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974)); *see Viasystems, Inc. v. EBM-Papst St. George GMBH & Co.*, K.G., 646 F.3d 589, 592 (8th Cir. 2011). Fraserside need not, however, establish jurisdiction by a preponderance of the evidence until an evidentiary hearing is held, or until trial. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).   Where, as here, "'the district court does not hold a hearing and instead relies on pleadings and affidavits, . . . the court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.'" *Pangaea, Inc. v. Flying Burrito L.L.C.*, 647 F.3d 741, 745 (8th Cir.

2011)(quoting *Dakota Indus., Inc.*, 946 F.2d at 1387); *Johnson v. Arden*, 614 F.3d 785, 793-94 (8th Cir. 2010)( "'If the District Court does not hold a hearing and instead relies on pleadings and affidavits, then we must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party.'")(quoting *Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 646–47 (8th Cir. 2003)); *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983-84 (8th Cir. 2004)(noting that a court "must view the evidence in the light most favorable to [plaintiffs] and resolve factual conflicts in its favor."). For Fraserside to survive Youngtek's motion to dismiss under Rule 12(b)(2), Fraserside "'need only make a prima facie showing of jurisdiction,' and may do so by affidavits, exhibits, or other evidence." *Romak USA, Inc.*, 384 F.3d at 983 (quoting *Epps*, 327 F.3d at 647); *accord K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011); *see Viasystems, Inc.*, 646 F.3d at 592; *Pangaea, Inc.*, 647 F.3d at 745.

I "may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994); *accord K-V Pharm. Co.*, 648 F.3d at 592 ("Personal jurisdiction in a diversity case exists 'only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause.'") (quoting *Dever*, 380 F.3d at 1073 (internal quotation marks omitted)). Iowa's long-arm statute "expands Iowa's jurisdictional reach to the widest due process parameters allowed by the United States Constitution."[2] *Hammond v.*

---

[2]Iowa's long-arm statute is actually set forth in two places:  Iowa Code § 617.3 and Iowa Rule of Civil Procedure 1.306.  Section 617.3 provides for the service of "foreign corporations or nonresidents contracting or committing torts in Iowa," Iowa Code § 617.3 (2006), and Rule 1.306 provides for an "[a]lternative method of service" that applies to "every corporation, individual, personal representative, partnership or association," Iowa R. Civ. P. 1.306.  Rule 1.306 specifically extends Iowa's

*Florida Asset Fin. Corp.*, 695 N.W.2d 1, 5 (Iowa 2005) (discussing Iowa Rule of Civil Procedure 1.306).   "As a result, the Court is left with the sole issue of whether exercising personal jurisdiction over [the] nonresident Defendant is consistent with principles of due process."  *Brown v. Kerkhoff*, 504 F. Supp. 2d 464, 499-500 (S.D. Iowa 2007); *see Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir. 1994) ("[W]hen a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the due process clause . . . the inquiry collapses into the single question of whether exercise of personal jurisdiction comports with due process.").

"The Due Process Clause requires 'minimum contacts' between the nonresident defendant and the forum state before the court may exercise jurisdiction over the defendant."   *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).   The Eighth Circuit Court of Appeals has explained sufficient minimum contacts as follows:

> "Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice."   By defendant's reasonable anticipation, we mean "there must be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."   We have set "a five-part test for measuring minimum contacts:  (1) the nature and quality of the contacts with the forum state; (2) the quantity of those

---

jurisdictional reach to the federal constitutional limits.  *See Hammond*, 695 N.W.2d at 5; *Larsen v. Scholl*, 296 N.W.2d 785, 788 (Iowa 1980) (noting that Iowa Rule of Civil Procedure 56.2 (now Rule 1.306), "unlike Iowa's older 'long-arm' statute, section 617.3, . . . expands Iowa's jurisdictional reach to the widest due process parameters of the federal constitution").

> contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." Factors one through three are primary. With respect to the third factor, we distinguish between specific jurisdiction and general jurisdiction. "'Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while '[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'"

*Id.* (citations omitted); *see K-V Pharm. Co.*, 648 F.3d at 592; *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 667 F.3d 515, 518 (8th Cir. 2010); *Steinbuch*, 518 F.3d at 585-86; *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006).

The Eighth Circuit Court of Appeals has further instructed that:

> The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party of a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State.

*Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693-94 (8th Cir. 2003) (citations omitted).

"'Minimum contacts must exist either at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to the filing of the lawsuit.'" *Johnson*, 444 F.3d at 955-56 (quoting *Pecoraro v. Sky Ranch For Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003)). If the court determines that a defendant has the requisite "minimum contacts within the forum state, these contacts may be considered in light of other factors to determine whether the assertion of

personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *see Luv N. Care Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) ("It remains for us to inquire whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. When a plaintiff makes its prima facie case that the defendant has 'minimum contacts' with the forum state, the burden of proof shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." (citation and quotation omitted)). These other factors include:

> "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of the controversies," and the "shared interest of the several States in furthering fundamental substantial social policies."

*Burger King Corp.*, 471 U.S. at 476-77 (quoting *World Wide Volkswagen*, 444 U.S. at 292). "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.* at 477. If, however, a defendant "seeks to defeat jurisdiction" when the defendant purposefully "directed his activities at forum residents"—i.e., when minimum contacts are clearly established—the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

### C.     *Personal Jurisdiction Analysis*

Fraserside contends that Youngtek's contacts with Iowa are sufficient to establish either specific jurisdiction or general jurisdiction.   I will consider each of these jurisdictional grounds in turn.

### 1.     *General jurisdiction*

"A court obtains general jurisdiction 'against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum.'" *Johnson*, 614 F.3d at 794 (quoting *Dever*, 380 F.3d at 1073)(quoting in turn *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984)).   "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853–54 (2011); *see Viasystems, Inc.*, 646 F.3d at 592 (quoting *Brown*, 131 S. Ct. at 2853-54).   Fraserside contends that Youngtek is subject to general personal jurisdiction based on its websites' "continuous and systematic business with residents of Iowa. . . ." Fraserside Br. at 6.   Fraserside points to TNAflix.com's more than 2,000,000 visits, and empflix.com's 1,248,000 visits, by Iowa users during the two year period from February 2009, to February 2011, as evidence of Youngtek's continuous and systematic business contacts with Iowa.

In *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710 (8th Cir. 2003), the Eighth Circuit Court of Appeals adopted the "sliding scale" approach established by *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), to determine if website contacts provide a basis for specific jurisdiction. *Lakin,* 348 F.3d at 710 ("We agree with our sister circuits that the *Zippo* model is an appropriate approach in cases of specific jurisdiction—, i.e., ones in which we need only find

13

'minimum contacts.'"). The "sliding scale" approach recognizes that "'the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that the entity conducts over the Internet.'" *Id.* (quoting *Zippo Mfg. Co.*, 952 F. Supp. at 1124). In *Lakin*, the Eighth Circuit Court of Appeals observed that:

> "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site."

*Id.* at 710–11 (quoting *Zippo Mfg. Co.*, 952 F. Supp. at 1124).

The Eighth Circuit Court of Appeals concluded that, while the *Zippo* model is an appropriate approach when considering specific jurisdiction, it is insufficient, in and of itself, for determining whether a defendant's contacts are both substantial and continuous for purposes of general jurisdiction. *Id.* at 711; *see CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1075 (9th Cir. 2011) (noting that "the interactivity of a non-resident defendant's website typically 'provides limited help in answering the distinct question whether the defendant's forum contacts are sufficiently substantial, continuous, and systematic to justify general jurisdiction.'") (quoting *Mavrix Photo,*

14

*Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1227 (9th Cir. 2011)); *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002) (noting that the *Zippo* sliding scale "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction."). As the Eighth Circuit Court of Appeals noted, "[u]nder the *Zippo* test, it is possible for a [website] to be very interactive, but to have no quantity of contacts." *Lakin*, 348 F.3d at 712. Thus, the court of appeals held that the *Zippo* test was only a starting point in conducting a website-based general jurisdiction analysis. In addition to considering the characteristics of a website under the *Zippo* test, it is also necessary to weigh the quantity of the defendant's contacts via its website. *See id.* Consequently, in determining whether Youngtek's contacts with Iowa are sufficient to establish general jurisdiction, I will consider, *inter alia*, the nature, quality, and quantity of its contacts. *See id.* (citing *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir. 1965)); *see also Pangaea, Inc.*, 647 F.3d at 746 n.4; *Johnson*, 614 F.3d at 794; *Steinbuch*, 518 F.3d at 585.

Youngtek is a Cyprus based company. Youngtek has no offices in Iowa, no employees in Iowa, no telephone number in Iowa, and no agent for service of process in Iowa. No Youngtek officer or director has ever visited Iowa. Youngtek does not maintain any of servers in Iowa. Yountek's complete absence of contacts with the State of Iowa is the antithesis of the type of continuous and systematic contacts necessary for exercising general personal jurisdiction over it. *See VGM Fin. Servs. v. Singh*, 708 F. Supp. 2d 822, 835 (N.D. Iowa 2010) (finding defendant's contacts with Iowa insufficient to establish general jurisdiction where, among other factors, defendant did not have an office, telephone number, bank account or any employees, representatives, or agents in Iowa).

15

Youngtek's websites offer internet users throughout the world the option of uploading, downloading, and watching adult films. When videos are uploaded, they go from the user to storage on the host site which is in the Netherlands. During the two year span between February 17, 2009 and February 17, 2011, TNAflix.com had 2,197,104, and empflix.com 1,248,000, visits from Iowa users. These numbers, however, reflect only the gross number of visits to the websites and provide no indication of the number of users making these visits. TNAflix.com and empflix.com both previously offered premium memberships. However, only person with an Iowa IP address purchased a premium membership, a three-day premium membership for one dollar.[3] Thus, while the number of visits to Youngtek's websites is substantial, there is only minimal interactivity between the websites and its Iowa visitors, as least on the record before me. As the Seventh Circuit Court of Appeals explained:

> With the omnipresence of the Internet today, it is unusual to find a company that does not maintain at least a passive website. Premising personal jurisdiction on the maintenance of a website, without requiring some level of "interactivity" between the defendant and consumers in the forum state,

---

[3] Courts have rejected imposing general jurisdiction over a defendant where the defendant only makes a small amount of internet sales to the forum state. *See FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1092 (D.C.Cir.2008) (holding that residents must use the website in a continuous and systematic way for it to form the basis of general jurisdiction); *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.*, 297 F.Supp.2d 1154, 1161-62 (W.D. Wis. 2004) (holding that single, one book sale over the internet was insufficient for general jurisdiction); *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F.Supp.2d 824, 833 (N.D. Ill. 2000) (finding that general jurisdiction was inappropriate where Illinois resident purchased goods from defendant's interactive website and had them sent to Illinois); *Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F.Supp.2d 448, 451 (E.D. Pa. 1999) ("[T]he establishment of a website through which customers can order products does not, on its own, suffice to establish general jurisdiction. To hold that the possibility of ordering products from a website establishes general jurisdiction would effectively hold that any corporation with such a website is subject to general jurisdiction in every state.").

would create almost universal personal jurisdiction because
of the virtually unlimited accessibility of websites across the
country. See ALS Scan, Inc. v. Digital Serv. Consultants,
Inc., 293 F.3d 707, 712-13 (4th Cir.2002). This scheme
would go against the grain of the Supreme Court's
jurisprudence which has stressed that, although technological
advances may alter the analysis of personal jurisdiction,
those advances may not eviscerate the constitutional limits
on a state's power to exercise jurisdiction over nonresident
defendants.

*Jenning v. AC Hydraulic*, 383 F.3d 546, 550 (7th Cir. 2004); *see also Toys "R" Us, Inc. v. Step Two*, 318 F.3d 446, 454 (3d Cir.2003) ("[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world.  Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.").

Although Youngtek operates websites with interactive features, Youngtek's single sale of one three-day premium membership, does not demonstrate intentional, continuous, and substantial contacts with Iowa.  The near universal accessibility of the internet makes it a unique mode of communication, but this feature does not require that I abandon fundamental jurisdictional principles. *See Hy Cite Corp. v. Badbusinessbureau.com*, L.L.C., 297 F.Supp.2d 1154,1160 (W.D. Wisc. 2004) ("[R]egardless how interactive a website is, it cannot form the basis for personal jurisdiction . . . unless the contacts through the website are so substantial that they may be considered 'systematic and continuous' for the purpose of general jurisdiction."). Accordingly, I conclude Fraserside has failed to meet its burden of demonstrating that Iowa courts have general jurisdiction over Youngtek. *See Viasystems, Inc.*, 646 F.3d at

595; *Wells Dairy, Inc.*, 667 F.3d at 518; *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008); *Romak*, 384 F.3d at 983–84.

### 2. Specific jurisdiction

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Brown*, 131 S. Ct. at 2851 (quoting Arthur T. Von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1136 (1966)). "Specific jurisdiction is proper 'only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities.'" *Johnson*, 614 F.3d at 795 (quoting *Steinbuch*, 518 F.3d at 586). Fraserside asserts that specific jurisdiction over Youngtek exists because Youngtek has directed tortious conduct at Iowa. Fraserside relies upon the *Calder* effects test formulated by the United States Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test provides that:

> "a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—[in the forum state]."

*Johnson*, 614 F.3d at 796 (quoting *Lindgren v. GDT*, 312 F. Supp. 2d 1125, 1132 (S.D. Iowa 2004)); *see Viasystems, Inc.*, 646 F.3d at 595 (quoting *Johnson*, 614 F.3d at 796). The *Calder* effects test "allows the assertion of personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390–91 (8th Cir. 1991) (quoting *Brainerd v. Governors of Univ. of*

*Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989)).  Moreover, the Eighth Circuit Court of Appeals construes the *Calder* effects test narrowly.  *See Johnson*, 614 F.3d at 796-97 ("Additionally, even if the effect of Heineman's alleged statement was felt in Missouri, we have used the *Calder* test merely as an additional factor to consider when evaluating a defendant's relevant contacts with the forum state. . . We therefore construe the *Calder* effects test narrowly, and hold that, absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction."); *see also Furminator, Inc. v. Wahba*, No. 4:10CV01941, 2011 WL 3847390, at *3 (E.D. Mo. Aug. 29, 2011) (noting that the Eighth Circuit Court of Appeals construes the *Calder* effects test narrowly); *Oticon, Inc. v. Sebotek Hearing Sys.*, L.L.C., 865 F. Supp. 501, 520 (D.N.J. 2011) (noting in *Johnson*, the Eighth Circuit Court of Appeals expressly clarified its position that it construes the *Calder* effects test narrowly); *Express Scripts, Inc. v. Care Continuum Alliance, Inc.*, 2011 WL 219967, at *4 (E.D. Mo. June 7, 2011) (observing that "[t]he Eighth Circuit has narrowly construed the *Calder* effects test. . .").

Although I accept as true Fraserside's allegations that Youngtek intentionally infringed Fraserside's registered copyrights and trademarks, these allegations, alone, fail to demonstrate that Youngtek "uniquely or expressly aimed" its tortious acts at Iowa.  *Johnson*, 614 F.3d at 796.  Although Youngtek's websites are both commercial and interactive, as an Iowa district court noted in a case presenting similar facts, such a website "is arguably no more directed at Iowa than at Uzbekistan."  *Lindgren v. GDT, L.L.C.*, 312 F. Supp. 2d 1125, 1131 (S.D. Iowa 2004).   The district court concluded that because the website could be accessed anywhere, including Iowa, "its existence does not demonstrate an intent to purposefully target Iowa."  *Id.; see ESAB Group, Inc. v. Centricut, L.L.C.*, 34 F. Supp. 2d 323, 331 (D.S.C. 1999) ("While it is true that anyone, anywhere could access Centricut's home page, including someone in South

Carolina, it cannot be inferred from this fact alone that Centricut deliberately directed its efforts toward South Carolina residents."). Thus, I conclude that Fraserside has failed to demonstrate that Youngtek's actions were "'performed for the very purpose of having their consequences felt in the forum state.'" *Dakota Indus.*, 946 F.2d at 1390–91 (quoting *Brainerd*, 873 F.2d at 1260).

Even assuming, arguendo, Fraserside could demonstrate that Youngtek's actions were aimed at Iowa and felt in Iowa, the *Calder* effects test is "merely an additional factor to consider when evaluating a defendant's relevant contacts with the forum state." *Johnson,* 614 F.3d at 796–97. I must also consider the five factors developed by the Eighth Circuit Court of Appeals in determining whether a nonresident defendant has sufficient minimum contacts with the forum state to exercise personal jurisdiction. I must consider: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing its residents a forum; and (5) the convenience of the parties. *See K-V Pharm. Co.*, 648 F.3d at 592; *Wells Dairy, Inc.*, 667 F.3d at 518; *Steinbuch*, 518 F.3d at 585-86; *Johnson*, 444 F.3d at 956. Of these factors, "the first three factors are of primary importance, and the last two are 'secondary factors.'" *Id*. After considering these five factors, I conclude that Fraserside has not demonstrated that Youngtek has sufficient minimum contacts with Iowa to justify exercising personal jurisdiction. As discussed above, Youngtek has a near total absence of contacts with the State of Iowa. Thus, the nature and quality of Youngtek's contacts with Iowa; the quantity of Youngtek's contacts with Iowa; and, the relation of the cause of action to Youngtek's contacts, all decidedly weigh against exercising personal jurisdiction. While Iowa has an interest in providing a local forum in which its resident corporations may litigate claims against non-residents, Iowa's "interest in providing its residents with a forum cannot make up for the absence of

minimum contacts." *Digi–Tel Holdings, Inc., v. Proteq Telecomms.(PTE)*, Ltd., 89 F.3d 519, 525 (8th Cir. 1996). Additionally, the convenience of the parties is, at best, a neutral factor due to Fraserside's extremely limited presence in Iowa. Both parties will be required to travel to litigate this case, regardless of my ruling on Youngtek's motion.

Thus, after considering all five factors, I conclude that the exercise of general or specific personal jurisdiction over Youngtek is inappropriate under the Iowa long-arm statute and fails to comport with due process. Thus, viewing the circumstances of this case as a whole, Fraserside has failed to make a prima facie case of personal jurisdiction over Youngtek.

### D.    Federal Long-Arm Statute

Fraserside, alternatively, argues that, even if it did not make a prima facie showing of personal jurisdiction under Iowa's long-arm statute, personal jurisdiction exists under the federal long arm statute found in Federal Rule of Civil Procedure 4(k)(2).[4] *See United States v. Swiss American Bank, Ltd.*, 191 F.3d 30, 36 (1st Cir. 1999)(observing that Rule 4(k)(2) is "a sort of federal long-arm statute."). Rule 4(k)(2)

---

[4] Rule 4(k)(2) states:

> **(2)    *Federal Claim Outside State-Court Jurisdiction*.** For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> > (A)    the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> >
> > (B)    exercising jurisdiction is consistent with the United States Constitution and laws.

FED. R. CIV. P. 4(k)(2).

permits a court to exercise jurisdiction over a foreign defendant that is not subject to the jurisdiction of the courts of general jurisdiction of any state, as long as the plaintiff's claim arises under federal law and the exercise of personal jurisdiction would not offend due process.[5] *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218-19 (11th Cir. 2009) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000)). "Rule 4(k)(2) was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist." *Synthes (U.S.A.) v. G.M. Dos Reis Jr.*, 563 F.3d 1285, 1295 (9th Cir. 2009). Rule 4(k)(2) closed a loophole that existed prior to 1993. *Synthes,* 563 F.3d at 1295. As the advisory committee notes explain:

> Under the former rule, a problem was presented when the defendant was a non-resident of the United States having contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection, but having insufficient contact with any single state to support jurisdiction under state longarm legislation or meet the requirements of the Fourteenth Amendment limitation on state court territorial jurisdiction. In such cases, the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts, which was incorporated into the federal practice by the former rule. In this respect, the revision responds to the suggestion of the Supreme Court made in *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 111, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987).

Fed. R. Civ. P. 4(k)(2) advisory committee notes to 1993 amendment. Specifically, Rule 4(k)(2) permits a court to exercise personal jurisdiction over a defendant if: (1)

---

[5] "Rule 4(k)(2) was added in 1993 to correct an anomaly in federal law. Without the provision, a foreign defendant who lacked minimum contacts with any one forum state, but who had minimum due process contacts with the United States as a whole, could not be sued in a federal court without its consent." *Abelesz v. OTP Bank*, 692 F.3d 638, 656 n.8 (7th Cir. 2012).

the plaintiff's claim arises under federal law; (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (3) the exercise of jurisdiction comports with due process. *See Synthes (U.S.A.) v. G.M. Dos Reis Jr.*, 563 F.3d 1285, 1293–94 (9th Cir. 2009); *see also World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir. 1996); *Oldfield*, 558 F.3d at 1218-19.[6]  I take up each of these requirements *seriatim*.

### 1.     Claims arising under federal law

Fraserside brings six claims, all of which arise under federal law:  copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 et seq.; contributory copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 et seq.; vicarious copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 et seq.; inducing copyright infringement, in violation of 17 U.S.C. §§ 106 and 501 et seq.; false designation of origin, in violation of 15 U.S.C. § 1125(a); and, dilution of trademark, in violation of 15 U.S.C. § 1125(c).  Since Fraserside has pled copyright and trademark claims, it is uncontested that those claims satisfy the first requirement of Rule 4(k)(2).

### 2.     No state with personal jurisdiction over defendants

Secondly, Rule 4(k)(2) requires that defendants not be subject to personal jurisdiction in any state.  The parties dispute who bears the burden of establishing that Youngtek lacks sufficient contacts with any particular state.   Federal courts are divided on this question.  The First Circuit Court of Appeals has adopted a burden-shifting framework that places the initial burden on plaintiff to "certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not

---

[6]Because the Eighth Circuit Court of Appeals has not discussed Rule 4(2)(k), I turn to decisions from the other federal courts of appeals for direction.

subject to suit in the courts of general jurisdiction of any state."[7]  *United States v. Swiss Am. Bank*, 191 F.3d 30, 41 (1st Cir. 1999).  Youngtek argues that I should adopt the First Circuit Court of Appeals's approach.  The Fourth Circuit Court of Appeals has followed the First Circuit's approach.  *See Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory*," 283 F.3d 208, 215 (4th Cir.2002) (citing with approval the *Swiss American Bank* decision in deciding whether the second requirement of Rule 4(k)(2) was met).  Rather than requiring the plaintiff to meet the onerous burden of proving that a defendant is not subject to personal jurisdiction, other federal courts of appeals use the following approach:

> A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there. . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

*ISI Int'l, Inc. v. Borden Ladner Gervais L.L.P.*, 256 F.3d 548, 552 (7th Cir. 2001) (citations omitted); *see Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009); *Holland Am. Line, Inc. v. Wartsila N.A.*, 485 F.3d 450, 461 (9th Cir. 2007); *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005); *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004).  Fraserside champions this line of authority.  The Federal Circuit Court of Appeals offered this justification for this approach:

---

[7] Under this rubric, "[]f the plaintiff makes out his prima facie case, the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient." *Swiss Am. Bank*, 191 F.3d at 41.

We conclude that, in federal cases, the purposes of Rule 4(k)(2) are best achieved when the defendant is afforded the opportunity to avoid the application of the rule only when it designates a suitable forum in which the plaintiff could have brought suit. The advisory committee was concerned with defendants escaping jurisdiction in U.S. federal courts while still having minimum contacts with the United States. If we were to adopt the First Circuit's requirement that a plaintiff must prove that a defendant was not subject to jurisdiction in any of the fifty states, we would be allowing some defendants to escape jurisdiction due to the excessive burden involved in making such a showing. It is difficult to prove a negative. Furthermore, that approach would not allow plaintiffs to plead jurisdiction in the alternative under Rule 4(k)(1)(A) and Rule 4(k)(2). Requiring a plaintiff to certify that a defendant is not subject to jurisdiction in any state forecloses an argument by the plaintiff that the defendant is subject to jurisdiction in the state in which the court resides. *See Base Metal Trading*, 283 F.3d at 215 (noting that the First Circuit's certification requirement does not permit litigants to adopt "inconsistent alternate positions in a case"). An approach that forecloses alternative arguments appears to conflict with the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single court or defense or in separate ones.").

*Touchcom, Inc.*, 574 F.3d at 1415.  Because this argument is persuasive and a majority of the federal courts of appeals have adopted this approach, I presume that the Eighth Circuit Court of Appeals would also follow it.

Youngtek has not met its burden, here, and named another state where this lawsuit could proceed.  Indeed, to the contrary, Youngtek argues that it is not subject to personal jurisdiction anywhere in the United States.  Given this argument, Rule 4(k)(2)'s second requirement is satisfied.

### 3.   Due process

Finally, Rule 4(k)(2) requires that the exercise of jurisdiction comport with due process.  *Synthes*, 563 F.3d at 1293–94; *M/V Ya Mawlaya*, 99 F.3d at 720.   The due process analysis under Rule 4(k)(2) is nearly identical to the traditional personal jurisdiction analysis, the only difference lies in that the forum under analysis shifts from Iowa to the United States as a whole.  *See Synthes*, 563 F.3d at 1295; *Oldffield*, 558 F.3d at 1220; *Holland Am. Line, Inc.*, 485 F.3d at 463 (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006).   Instead of applying the personal jurisdictional framework to Youngtek's contacts with Iowa, I will instead consider Youngtek's contacts with the United States as a whole.

Turning to the facts of this case, Fraserside alleges that Youngtek has the following contacts with the United States:

- 17 to 20 percent of visitors to Youngtek's websites are U.S. citizens.
- Youngtek's websites collect memberships in U.S. dollars and advertise to U.S. residents.
- Youngtek's targeted U.S. users for premium memberships through an e-mail campaign.
- Youngtek employed a Florida contractor for work on its website.
- Youngtek registered its domain names through Namescheap, a California registrar.

Plaintiff's Br. at 16.

Youngtek concedes that it hired David Sierra in 2009, to perform "some limited development work" for it.  Sierra Aff. at ¶ 3; Docket no. 50-6.  Sierra performed his services as an "independent contractor" and was paid on an hourly basis.  Sierra Aff. at ¶ 4.   Sierra avers that he received "approximately $2,000 total in payments from Youngtek" and all of his services were provided in Florida.  Sierra Aff. at ¶¶ 6-7.

Youngtek also concedes that during the two year span between February 17, 2009 and February 17, 2011, TNAflix.com had 2,197,104 visits from Iowa users and empflix.com had 1,248,098 visits from Iowa users. These numbers represented 0.14% of all visits to TNAflix.com and 0.17% of all visits to empflix.com. Youngtek also concedes that one person with an Iowa IP address purchased a three-day premium membership for one of its websites for one dollar.

Youngtek challenges the remaining contacts asserted by Fraserside, arguing that Fraserside's allegations are either unsupported in the record or only supported by unauthenticated screenshots from third-party websites. Specifically, Youngtek challenges Fraserside's assertion that 17 to 20 percent of the visitors to its websites are U.S. residents because that assertion is only supported by an unauthenticated screenshot from a third-party website. Rule 901 of the Federal Rules of Evidence requires authentication of evidence. Private web-sites, however, are not self-authenticating. *Martinez v. America's Wholesale Lender*, 446 Fed. App'x 940, 944 (9th Cir. 2011); *Foreword Magazine v. OverDrive, Inc.*, No. 1:10-CV-1144, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011); *St. Luke's Cataract and Laser Institute, P.A. v. Sanderson*, No. 8:06–cv–223–T–MSS, 2006 WL 1320242, at *2 (M.D. Fla. May 12, 2006); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 556 (D. Md. 2007). To authenticate printouts from a website, the party proffering the evidence must produce "some statement or affidavit from someone with knowledge [of the website] . . . for example [a] web master or someone else with personal knowledge would be sufficient." *In re Homestore.com, Inc. Sec.Litig.*, 347 F. Supp. 2d 769, 782 (C.D. Cal. 2004). Here, Fraserside's proffered materials do not come close to meeting the requirements for authentication and fails to provide an adequate basis to accept them.[8]   Accordingly,

---

[8] Even if Fraserside had properly authenticated the internet printouts, whether the information drawn from those printouts constitutes inadmissible hearsay remains. Since

other than Youngtek's concession about the number of visits from Iowa users to its websites during a two year period, the record is devoid of any evidence of visits to the websites from other parts of the United States.

Likewise, other than Youngtek's concession that one person with an Iowa IP address purchased a three-day premium membership for one of Youngtek's websites for one dollar, Fraserside has offered no materials to buttress its assertion that Youngtek has made money from within the United States by offering premium memberships to its websites. Fraserside has offered no materials whatsoever to support its assertion that visitors to Youngtek's websites from the United States have uploaded, downloaded, or viewed Fraserside's films. Fraserside has also offered no materials to support its assertion that Youngtek registered its websites' domain names through Namecheap, a California registrar. To the contrary, in its Motion for Default Judgment, Fraserside previously asserted that the registrar was Key-Systems, GmbH, a German registrar. Fraserside's utter lack of any evidentiary materials to support its assertions is particularly surprising since Fraserside's submission comes after over six months of jurisdictional discovery.

Youngtek's aggregate number of contacts within the United States adds little to support the exercise of jurisdiction within the United States. Youngtek has no offices in the United States, no employees in the United States, no telephone number in the United States, and no agent for service of process in the United States. No Youngtek officer or director has ever visited the United States. Youngtek does not maintain any servers in the United States. The only additional contact not considered above is Youngtek's hiring of David Sierra, as an independent contractor, in 2009, to perform "some limited development work" in Florida. Sierra received approximately $2,000

---

I have concluded that website printouts are not properly authenticated, it is unnecessary to decide the hearsay question at this time.

for his work.   Sierra's temporary hiring and performance of work for Youngtek is not sufficiently continuous and systematic to confer personal jurisdiction.

## III.   CONCLUSION

For the reasons previously discussed, because Youngtek does not have sufficient "minimum contacts" with Iowa or the United States, the maintenance of this lawsuit would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316.   I, therefore, grant Youngtek's motion to dismiss.   Judgment shall enter accordingly.

**IT IS SO ORDERED**.

**DATED** this 10th day of January, 2013.

_____

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA